## WEBSTER S. BLADES, Executor, *v.* ANNA SZATAI.

*Support of Child—Obligation on Father—Divorce Decree—*
*Effect of Father's Death.*

A father is under a common law obligation to support his child during its minority, which obligation continues after a divorce decree, unless this provides that the child shall be supported by some one other than the father.          p. 647

That a divorce decree ordered the father of a child to pay a sum named weekly to the mother for its support did not affect the father's common law obligation to support the child, but merely prescribed the amount to be paid for this purpose and the person through whom the child should receive it.     p. 647

A father's obligation to support his child until it reaches its majority ceases upon the father's death, regardless of the age of the child, since the father has an absolute right to dispose of his property by will, so as to disinherit the child.  pp. 647, 648

That a decree of divorce, rendered in favor of the husband, requires him to pay a weekly sum to the wife for the support of their infant child, does not make his estate liable for such support after his death.                    pp. 648-653

Code, art. 16, sec. 39, giving power to the equity courts, in divorce proceedings, to make orders as to the custody and support of the children, and to vary and modify such orders, gives such courts no greater or more comprehensive powers in that regard than they have in awarding alimony, and in varying or modifying decrees in respect thereto.          p. 649

Code, art. 16, sec. 80, giving equity courts original jurisdiction in cases relating to the custody or guardianship of children, with power to determine who shall be charged with the support and maintenance of a child or children, does not authorize such courts to charge the estate of a deceased parent with the support and maintenance of any one or all of his minor children.
pp. 650, 651

*Decided January 11th, 1927.*

Appeal from the Circuit Court of Baltimore City (SOL-TER, J.).

Petition by Webster S. Blades, executor of Andrew Szatai, deceased, for an order declaring no money to be due Anna Szatai, divorced wife of said deceased, under the decree of divorce, by which the said deceased was ordered to pay said Anna a monthly sum for the support of their minor son. From an order directing said executor to pay said Anna a sum named as arrearages to the date of said order, he appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Webster S. Blades,* with whom was *Eugene Frederick* on the brief, for the appellant.

*B. Harris Henderson,* with whom was *Adolph Schoeneis* on the brief, for the appellee.

.DIGGES, J., delivered the opinion of the Court.

In a decree of absolute divorce, passed on March 29th, 1923, by the Circuit Court of Baltimore City, in the suit of Andrew Szatai against Anna Szatai, there was a provision that the wife should have the custody of the only child of the parties, a boy then fifteen years of age, and that the husband should pay to the wife three dollars per week for the support and maintenance of their son until he attains the age of twenty-one years, unless he becomes in the meantime self-supporting. The specified payments were made until September 19th, 1923, when they were suspended, with the verbal assent of the court, because Mrs. Szatai failed to report as to her son's earnings at that time, in response to an inquiry addressed to her in New York, where they were then living, by the probation officer in Baltimore, by whom the father's weekly payments had been collected and remitted. On June 25th, 1924, Mr. Szatai died, leav-

ing a will which disposed of a solvent estate in excess of
$4,000, but made no provision for his son. The executor
of the will filed a petition in the Circuit Court, referring
to the terms of the divorce decree in regard to the payments
directed to be made for the support of the testator's son,
and alleging that his mother had preferred a claim against
her former husband's estate for the weekly payments in
arrears and for those which might accrue to the date of the
son's majority. It was alleged to be the information and
belief of the executor that the son had been self-supporting
since September 19th, 1923, and it was further averred that,
upon the death of his father, the liability imposed upon him
by the decree for the son's support terminated. In her
answer to the petition, Mrs. Szatai denied that her son
was self-sustaining, and relied upon the provisions for his
benefit in the divorce decree as being still effective.

The only testimony offered at the hearing on the petition
was that of the probation officer, who described the circum-
stances under which the weekly payments were suspended,
and who produced a letter from Mrs. Szatai, dated October
13th, 1923, stating that her son was employed as a "printer
boy" at a "very small salary of $5 a week which just pays
his car fare and lunch." Upon the evidence presented, the
court below, on February 26th, 1926, ordered that the
executor pay to Mrs. Szatai the sum of $378, being the
arrearage to that date in the prescribed payments, and that
the original order therefor should be a lien upon the assets
of Andrew Szatai, in the hands of the executor of his will,
until the son of the testator becomes twenty-one years of
age; but it was provided that before the executor should be
required to make any further payments under the decree,
a petition should be filed by Mrs. Szatai, or her son, and
evidence produced duly proving that the payments claimed
under the decree are actually necessary for the son's sup-
port. From that order the executor has appealed.

, It is provided by section 39 of article 16 of the Code that
the court shall "have power in all cases in which the care

and custody of the children of parties forms part of the relief prayed, whether a divorce is decreed or denied, to order and direct who shall have the guardianship and custody of the children and be charged with their support and maintenance, and may at any time thereafter annul, vary or modify such order in relation to the children." The contention of the appellee is that that part of the decree of the chancellor, under date of March 29th, 1923, in the divorce proceedings, making provision for the custody and support of the child, created an obligation upon the father so long as he lived, and upon his death, continued as an obligation for which his estate is responsible. This contention is disputed, and the effect claimed by the appellee is denied by the appellant. It is, however, conceded by the appellant that, if the child was not self-supporting from and after September 19th, 1923, up to the death of the father, which occurred June 25th, 1924, the father's estate is liable in a sum equal to three dollars per week between said dates. Therefore the single question for determination is whether or not the decree of March 29th, 1923, creates such a charge or liability against the father as will be extinguished by his death or will continue against his estate until such time as the child reaches the age of twenty-one years or becomes self-supporting.

The father was under the common law obligation to support his child during its minority, and this obligation continued without regard to a divorce decree, unless in that decree the court should order that it be supported by some one other than the father. The fact that the decree ordered the father to pay three dollars per week to the mother for the support of the child, in no way affected his common law obligation to support it, but only prescribed the amount to be paid for its support, and through whom the child was entitled to receive it. If there had been no divorce, the father would have been compelled under the law to support his child so long as he (the father) lived, or until the child reached its majority; but at the death of the father his

obligation to support the child ceased, no matter what its age might then be, for the reason that under the law as it exists in this state the father had an absolute right to make such testamentary disposition of his estate as would result in the child receiving nothing therefrom. If at the time of making his will the father had the requisite testamentary capacity and was not subjected to what the law denominates "undue influence," and the will was executed in compliance with the legal requirements as to witnesses, etc., it can not be doubted that he could legally and effectually disinherit his child. In such event the only redress for the child would be to attack the validity of the will upon some one or more grounds which the law of this state recognizes as being sufficient to invalidate and strike down a testamentary instrument.

To give the decree the force contended for by the appellee would, in effect, be destroying the right of testamentary disposition on the part of the father. It will be remembered that in the divorce case the father was not at fault, the decree being obtained by him against his wife; and it is difficult to see why, under these conditions, when the divorce was decreed in favor of the husband and against the wife, and when he was entirely free of any neglect of marital or perental duty or obligation, he should occupy a different and less favored position than he would if there had been no decree of divorce. Under the settled law in this state, courts of equity have full power to award alimony in cases of divorce *a vinculo matrimonii* or *a mensa et thoro,* and also upon a petition for alimony without divorce, where in the last mentioned class of cases the evidence would entitle the party to a divorce either absolute or partial; and it is equally well settled that a court awarding alimony has full power and authority to vary or modify its previous decree. *Emerson v. Emerson,* 120 Md. 584; *Polley v. Polley,* 128 Md. 60; *Outlaw v. Outlaw,* 118 Md. 498; *Clarke v. Clarke,* 149 Md. 590. While the language of section 39, above quoted, is full and comprehensive in respect to the

authority of courts of equity dealing with the custody and support of infants in divorce cases, or, as was said by Judge Boyd in *Hood v. Hood,* 138 Md. 366, in speaking of this language, "Our statute, section 38 (now section 39), article 16, would seem to be broad enough to cover all questions concerning the care and custody of the children as well as their support and maintenance," it will be seen from the authorities quoted above that even under this broad language courts of equity have no greater or more comprehensive powers in dealing with the custody and maintenance of infants than they have in awarding alimony and varying or modifying decrees in respect thereto. In the early case of *Wallingsford v. Wallingsford,* 6 H. & J. 398, this Court said: "Alimony is a maintenance afforded to the wife where the husband refuses to give it, or where from his improper conduct he compels her to separate from him. It is not a portion of his real estate, to be assigned to her in fee simple, subject to her control, or to be sold at her pleasure, but a provision for her support, to continue during their joint lives or so long as they live separate. Upon the death of either, or upon their mutual consent to live together, it ceases." In the case of *Emerson v. Emerson,* 120 Md. at page 590, the Court, speaking through Judge Constable, after quoting the above language, said: "This is the definition of alimony which has been recognized and followed through all of the Maryland decisions down to the present." To the same effect see *McCaddin v. McCaddin,* 116 Md. 573.

The above cases, and many others which might be cited, all hold that alimony awarded to the wife ceases from and after the death of the husband. In other words, it only continues during the joint lives of the husband and wife, and upon the death of either it is terminated. The language dealing with the court's power over the custody and support of minors is embraced in section 39, which has to do with divorce, and also authorizes the court to award alimony to the wife; and it would seem that the language used in respect to

children was not intended and should not be construed to create any greater responsibility or encumbrance upon the husband or his estate than would be the effect of a decree awarding alimony. Decrees, both for alimony and for the support and maintenance of children in divorce proceedings, grow out of the natural and common law obligation of the husband and father to support his wife and children. If there is any different obligation on the part of the husband to support the wife or the children, it would appear from the present state of the law in Maryland that it guards and protects the right of the wife to a greater degree than those of the children, because the husband is denied the testamentary right to so dispose of his property as to prevent his wife from sharing therein, while, as stated above, he is at perfect liberty to disinherit by will any one or all of his children. Therefore, if the court decrees support and maintenance for the wife by way of alimony, and by the same decree orders the husband to make payment to the wife in certain designated instalments for the support of the minor children, it being settled that the death of the husband terminates the payment of alimony, there can be no sound reason why it should not also terminate the payments by him for the support of the minor children. Without a divorce, the father is only bound to support his minor children so long as he lives, and it would seem to be illogical to hold that by reason of a divorce decreed upon a bill filed by the father, he being in no wise at fault, a child should be in a better position in respect to his father's estate than he would be without the decree for divorce.

Chapter 573 of the Acts of 1920, now codified as section 80 of article 16 of the Code, provides: "The several equity courts of this state shall have original jurisdiction in all cases relating to the custody or guardianship of children and may on bill or petition filed by the father or mother or relative or next of kin or next friend of any child or children to direct who shall have the custody or guardianship of such child or children, and who shall be charged with his, her or their support and maintenance, and may from time to time

thereafter annul, vary or modify its decree or order in relating to such child or children." It will be noted that this section, if not in exact words, in substance and effect empowers the equity courts of this state, upon bill or petition filed by any of the parties therein named, to award the guardianship and custody of a child to any person whom the court may determine as a proper custodian; and the court also has full power to order and decree who shall be charged with the support and maintenance of said child, with further power in the court, at any time after the original order or decree, to annul, vary or modify the same. This statute is a useful and beneficial one, and since its enactment has been constantly applied by the courts of the state in committing the guardianship and custody of children to suitable and proper persons, and requiring support and maintenance of the children from those upon whom the obligation to support and maintain justly falls. Yet even under the broad powers contained in this statute, so far as we are aware, no court in the state has ever attempted to make the support and maintenance of a minor child a charge upon the estate of a deceased parent. It will be seen that the power and authority of the courts under this section are fully as broad and comprehensive as under section 39, now being considered, and if the contention of the appellee here be sound, and is so held by the decision of this Court, it must follow that the courts of equity, in pursuance of the provisions of section 80, could charge the estate of a deceased parent with the support and maintenance of any one or all of his minor children. Thus the courts would be making disposition of the estate of the parent, and in effect, limiting, and in many cases nullifying, the right of testamentary disposition by the parent. In our opinion, it would be an unwarranted assumption of the legislative intent to put such a construction upon the language of section 39. It is a cardinal rule that a statute, where possible, should be so construed as to fit in and harmonize with the existing body of law, and not to give it such construction as would nullify or abridge a right so firmly established as that of testamentary disposition.

The language used by the lawmakers indicates that they had in mind and were dealing with living individuals, and not with estates of decedents; the clear and unmistakable inference being that the court was given the power to determine what person should be entitled to the custody of the minor, and what person should be charged with its support and maintenance, and not whose property or estate should be thus charged. If the Legislature had intended what is here contended for by the appellee, it would have been a simple matter to have said so in clear and unambiguous language. It is true that the language hereinbefore quoted from the case of *Hood v. Hood, supra,* might, standing alone, be taken as authority for the position of the appellee. However, in that case, the question now before us for determination was not raised or passed upon. The sole question to be there decided was, "whether under the circumstances the lower court was right in refusing to allow alimony *pendente lite.*" The language of the Court in that case in respect to the custody and maintenance of minor children was entirely unnecessary for decision of the question before the Court, and we are unwilling to adopt that language as decisive or binding on the point now before us. Neither are we willing to say that the Court, or the learned judge who delivered the opinion, intended or supposed that it would be binding authority for the position of the appellee here. We are not unmindful that several courts of last resort throughout the country have expressed views contrary to this decision, to wit, *Miller v. Miller,* 64 Maine, 484; *Mansfield v. Hill,* 56 Ore. 400; *Murphy v. Moyle,* 17 Utah, 113; *Creyts v. Creyts,* 143 Mich. 375; *Stone v. Bailey,* 75 Wash. 184, 48 L. R. A., N. S., 429. These decisions were all based upon the construction of the statutes of the particular states, and before they can be accepted even as persuasive authority, the law of those states respecting the right of testamentary disposition, alimony, and custody and maintenance of minors, must be found to be substantially the same as that of Maryland. We have not deemed it necessary to examine the statutes

of these states in respect to the subjects named, for the reason that should they be found identical with ours, we would still feel constrained to disagree with the conclusion of the courts of those states. It might also be noted that the statements in the general text of *Corpus Juris* and *Ruling Case Law* are only supported by the cases above cited.

It is clear that the common law obligation to support his minor child terminated at the death of the parent; that under the law of this state the individual has full and unobstructed right of testamentary disposition even to the extent of disinheriting children; that from the early decisions of this Court to the present day, *it is* settled that alimony awarded to a wife by a decree of court in divorce proceedings continues only during the joint lives of the husband and wife. We are therefore unwilling to give such construction to the language contained in section 39 of article 16 as would disturb the long determined and accepted policy of the state in reference to these matters. If the language of section 39, now under consideration, were so clear and unambiguous as to admit of no other construction than that contended for by the appellee, courts would be bound to so construe it and give force and effect to the legislative mandate; but, as hereinbefore stated, the language may be given two constructions: First, that which accords with the view of the lower court; and, second, that construction which does not abridge or interfere with the rights heretofore long exercised by the people of the state, of full testamentary disposition, and treats support and maintenance of minor children as analogous to alimony. We will adopt the second construction, thereby harmonizing this statute with the general body of the law as determined by the common law, other statutes, and the decisions of this Court.

In the recent case of *Rice v. Andrews,* decided by the Supreme Court of New York, reported in 127 Misc. 826, 217 N. Y. Supp. 528, the identical question herein presented was passed upon by that court, and the conclusion

reached was in harmony with the views we have expressed; the court saying:

"The liability of the decedent for the support of his son is not founded on any contract, express or implied. It is simply a natural and legal duty, which is imposed on any father who brings a child into the world. When the court granted this divorce and dissolved the marriage between the parents and gave the custody of the lad to the father, it simply continued by implication that general duty. The obligation under the decree is still a personal one, and does not constitute a debt of the parent. It cannot, therefore, be made operative upon his estate after his death.

"The duty resting upon the father to support and maintain his child during minority does not rest entirely upon the parental relation. The obligation carries with it the correlative right to the services and society of his offspring. This right the father no longer has. He is not here to enjoy association with his son, nor to profit by his earnings. His estate cannot stand in his shoes in this regard. One of the considerations which made the father responsible for the support and maintenance of the child vanished at the death of the former. This is a case which appeals to the sympathy of the court, and any tribunal would be glad to make provisions for this lad, who, through no fault of his own, has started life under a heavy handicap, and who is now left, at tender age, to grow up as best he can by his own efforts and those of his maternal grandparents. But as I view the law, the court is powerless to compel the estate of the father to support the lad, or to interfere with the father's power to dispose of his estate as he saw fit. The remedy for such a situation rests with the Legislature, and not with the court."

We cite this case, not as binding authority, but for the purpose of showing that the reasons which impelled that court to reach its conclusion were largely similar to those upon which our opinion rests.

From what we have said, it follows that the estate of

Andrew Szatai is only liable for such sum as represents payments at the rate of three dollars per week from September 19th, 1923, the date of the last payment, to June 25th, 1924, the date of his death; and the lower court erred in passing the order appealed from, and the same must be reversed.

> *Order reversed, and case remanded, that an order may be passed in accordance with the views herein expressed, costs in this court and court below to be paid out of the estate.*

---

Urner, J., filed the following dissenting opinion:

I am unable to agree with the conclusion that there should be a reversal in this case.

It is provided by statute that the court shall "have power in all cases in which the care and custody of the children of parties forms part of the relief prayed whether a divorce is decreed or denied to order and direct who shall have the guardianship and custody of the children, and be charged with their support and maintenance and may at any time thereafter annul, vary or modify such order in relation to the children." Code, art. 16, sec. 39. It was said by this Court in *Hood v. Hood,* 138 Md. 355, 366, that the language just quoted "would seem to be broad enough to cover all questions concerning the care and custody of the children as well as their support and maintenance."

The chief objection of the appellant to the order charging the estate of the deceased father with the amounts decreed to be paid for the support of his son, for the period since the father's death, is based on the common law principle that the liability of a parent for the support of his minor child exists only during the parent's life. But, as said in *Hood v. Hood, supra,* the statute we have referred to "shows very clearly that when the custody and support of children are to be passed on by the courts, they are no longer to be

necessarily governed by common law rules as to such custody and support." The theory of the decisions in such cases appears to be that, when the jurisdiction of a court is invoked for the dissolution of the marital union from which the parental relationship and obligation have resulted, the extent of the judicial authority to provide for the support of a child of the parties, during the period of minority, is to be determined by the language of the statute conferring the jurisdiction rather than by the rule of the common law.

In a note to *Stone v. Bayley* (Wash.), in 48 L. R. A. (N. S.), 429, where there is a collection of cases involving the question as to the effect of the father's death upon his liability, under the terms of a decree of divorce, for the support of his child, it is said: "This question usually arises, however, in cases of divorce where the mother is given the custody of the child, and the father is ordered to pay her a stipulated amount for its support, the general rule being that such an obligation created by decree of court does not terminate upon the death of the father in case he dies before the child arrives at majority, but survives his death." That statement is supported by the cases of *Miller v. Miller,* 64 Me. 484; *Mansfield v. Hill,* 56 Ore. 400; *Murphy v. Moyle,* 17 Utah 113; *Creyts v. Creyts,* 143 Mich. 375; and *Stone v. Bayley, supra.* In 9 R. C. L. 484, it is said that, according to the weight of the authorities, in cases where the father is required by a decree of divorce to make periodical payments for the support of his minor child, "the liability of the father is not necessarily terminated by his death, but may survive against his estate as to subsequently accruing instalments." The text of 19 C. J. 359, 360, is to the same general effect. The decisions in the cases cited were based upon the terms of the particular statutes which were operative in the respective jurisdictions. But in the view of this Court, as expressed in the language we have quoted from the opinion in *Hood v. Hood, supra,* our own statute is sufficiently broad "to cover all questions" as to the care, custody, support and maintenance of the children of parties to a divorce proceeding.

In *Miller v. Miller, supra,* the Supreme Judicial Court of Maine said: "The question is whether a decree of this court made in a divorce suit, that the mother shall have the care and custody of minor children, and that the father shall pay a certain sum quarterly towards their support, which by its terms is to continue in force till the further order of court, is discharged by the father's death. We think it is not. The statute conferring jurisdiction in such cases is very comprehensive. It authorizes the court to make such a decree as the circumstances require. If, from hostility to the mother, or other cause, there is danger that the father will disinherit the children, and thus leave them to be supported by their mother without any aid from his estate, a decree may very properly be made for their support that shall continue in force after his decease, or until they are of sufficient age to provide for themselves; or at least till the further order of court. And if there is danger that the father will squander his property, or convey it away, so that none will be left for the decree to operate upon, he may very properly be required to give security." The divorce in that case was decreed because of the husband's misconduct, but that circumstance was not treated as controlling upon the question as to the scope of the jurisdiction which the statute conferred. In this case, the concern of the court for the child's future maintenance prompted the decretal provisions for payments to be made during the period of his minority or dependence. The estate of the deceased father is amply sufficient to satisfy all of his obligations, including that imposed by the decree for his son's benefit. But the will of the father excludes his son from any share in his estate, and if it is not charged with the payments decreed, the son will be left without the continuing support for which the decree intended to provide. If the father had been required by the decree to give bond for the payments therein specified, the liability thus incurred would clearly be an indebtedness with which his estate would be chargeable. Or, if the requirement had been that he pay a designated gross amount in weekly instalments during a stated

period, it could hardly be doubted that the debt thus defined, or any unpaid portion of it, would be payable out of his estate. But the liability actually created by the decree is not essentially different in its nature from either of the obligations just described. In view of the purpose it was designed to serve, I do not think that it was extinguished by the death of the person upon whom it was imposed.

There is no proof in the case that the son, for whose benefit the payments under the decree were to be made until he becomes of age or self-supporting, is able to maintain himself without assistance. However, since his mother, into whose custody he was given by the decree, has failed to furnish any recent information as to his earnings, the order appealed from reasonably provided that no further instalments should be paid except upon proof that they were needed for the. purpose to which the decree intended them to be applied. In stating that the decree, in its provision for the support of the child, should be a lien upon the estate of the deceased father, in the hands of the executor of his will, the order under review was not concerned with any question of priority, but simply declared the enforceability of the claim against the solvent estate in course of administration.