**Violet S. BLUMENTHAL, Appellant,**

v.

**Lester S. BLUMENTHAL, Appellee.**

No. 2427.

Municipal Court of Appeals for the District of Columbia.

Reargued March 11, 1960.

Decided May 24, 1960.

Alexander Boskoff, Washington, D. C., for appellant.

Philip Goldstein, Washington, D. C., for appellee. George R. Jacobi, Washington, D. C., also entered an appearance for appellee.

Before ROVER, Chief Judge, HOOD, Associate Judge, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11–776(b).

ROVER, Chief Judge.

This case was before us previously, D.C. Mun.App., 155 A.2d 525. Involved is the question of the extent of the jurisdiction

of the Domestic Relations Branch in proceedings between husband and wife as they relate to matters affecting the maintenance, support and education of their children now and in the future.

While the type of relief requested by the appellant wife was briefly summarized in the majority opinion of this court, we think it appropriate to set forth her contentions in more detail in view of the order of the United States Court of Appeals, Blumenthal v. Blumenthal, D.C.Cir., 274 F.2d 751, remanding the case for our reconsideration in light of the decision of that court in Thomason v. Thomason, D.C.Cir., 274 F.2d 89. The husband and wife shortly before their absolute divorce in Alabama entered into an agreement that was never incorporated in the divorce decree. The principal claims of the wife for relief, predicated on the provisions of the agreement, are as follows:

(1) To require the husband to increase the agreed amount of support for the children.

(2) To require him to continue in force until his death no less than $50,000 of existing insurance on his life, to immediately, irrevocably designate the wife and children as equal beneficiaries thereunder, and to exhibit to the wife, within 30 days, the policy containing such provisions.

(3) To compel the husband to reinstate a $25,000 insurance policy on the wife's life that had been surrendered by him in violation of the agreement and to continue it in force by the payment of premiums.

(4) To require the husband to exhibit to the wife his Will, allegedly executed by him, leaving one-third of his estate to the children.

(5) To require the husband to pay to the wife on or before April 15 of each year $850 for each child for its expenses at a summer camp.

(6) To compel the husband to establish a trust fund to insure the carrying out of his promise to provide the children with college or university educations.

In our former decision we held that the trial court should have granted a hearing on the request for increased support for the children and we reversed to that extent the order dismissing the entire complaint. The majority affirmed the order of dismissal insofar as it dealt with the relief prayed for in items (2) to (6) set forth above. We assigned as grounds for our decision that the Domestic Relations Branch had equity jurisdiction for certain specific purposes only, being those set forth in Code 1951, 11–762 (Supp. VIII).[1] The purposes applicable to this case were those empowering the judges of that Branch to order the husband to support his children and to adjudicate civil actions to enforce support of such children. While we recognize that the relief prayed for in items (2) to (6), if granted, would be of some benefit to the children in the future, basically the wife was asking for a modification of the agreement and its enforcement as so modified. We held that the equity jurisdiction conferred on the court by Code 1951, 11–763(a) (Supp. VIII),[2] was limited to

1. "The Domestic Relations Branch and each judge sitting therein shall have exclusive jurisdiction over all actions for divorce from the bond of marriage and legal separation from bed and board, including proceedings incidental to such actions for alimony, pendente lite and permanent, and for support and custody of minor children; applications for revocation of divorce from bed and board; civil actions to enforce support of minor children; civil actions to enforce support of wife; actions seeking custody of minor children;

actions to declare marriages void; actions to declare marriages valid; actions for annulments of marriage; the following: determinations and adjudications of property rights, both real and personal, in any action hereinabove referred to in this section, irrespective of any jurisdictional limitation imposed on the Municipal Court for the District of Columbia; and proceedings in adoption."

2. "The Domestic Relations Branch is hereby vested with so much of the pow-

the type of relief the court could grant under 11–762; we did not think a modification and enforcement of a private agreement was encompassed under those sections.

■ Pursuant to the direction of the United States Court of Appeals, we have reconsidered our former decision following a careful analysis of Thomason; a majority of the court adheres to its original opinion. We think there is a basic difference in the facts of the two cases. In Thomason the decree for divorce in Nevada incorporated a separation agreement that granted custody of the children to the mother and required the father to pay $25 weekly for their support. Alleging changed conditions the father filed a complaint in the Domestic Relations Branch seeking custody of the children, which, if granted, would necessarily terminate the support order. The mother (through her committee) counterclaimed seeking a money judgment for arrears in the sum of $825 in support payments due by the father. That case stopped there. Here we are dealing with an agreement that was never before the Alabama court in the divorce proceeding; the mother is not asking for a money judgment, but save for the relief asked for in item (1), is seeking a type of remedy which can only be granted by a court having general equity power and which, in our opinion, the Domestic Relations Branch does not possess.

We feel that the language in Thomason supports our view that the only question decided there was whether the Branch had jurisdiction to render a money judgment for arrears in support payments, for the opinion states:

"The *precise, and only, question before us* is whether the Domestic Rela-

tions Branch of the Municipal Court for the District of Columbia has jurisdiction over a counterclaim seeking a money judgment for arrears in payments due under a foreign decree for the support of minor children. * * "3 (Emphasis supplied.)

We therefore feel that there is nothing in Thomason that requires us to depart from our original decision.

As to item (1), we think that even assuming general equity jurisdiction to be present in the Domestic Relations Branch, the relief asked by the wife in that item is not without further defect. Our former opinion pointed out that the court should have granted a hearing insofar as the support of the children "during their minority" [155 A.2d 525.] was concerned, based on the applicable statute. The agreement provides that the husband shall pay $300 a month for the support of the children, "until the youngest child reaches the age of twenty-one, or is graduated from the college or university then being attended, whichever is later."

■ It is obvious that the husband has bound himself to support the children even after they have reached their majority to the extent of the amount stated. It may be that the Domestic Relations Branch, if it had general equity jurisdiction, could enforce this contractual obligation as executed; but since the husband has not consented to the increase, to allow it within the framework of the agreement would be to bind him to pay his children in their majority an amount over and above that which he has legally obligated himself to pay. In Bloedorn v. Bloedorn, 67 App.D.C. 214, 216, 91 F.2d 245, 247, the court said: "No legal duty exists in this District by either the common law or statute requiring a father to provide for a child after that

er as is now vested in the United States District Court for the District of Columbia, *whether in law or in equity, as is necessary to effectuate the purposes of*

*this chapter* * * *." (Emphasis supplied.)

3. 274 F.2d at page 90.

child has attained *majority* * * *." [4] (Emphasis supplied.)

■ An analogous defect is also found in the fact that the husband has agreed to have his estate bound after his death. If the wife is to prevail and have the agreement modified upwards before enforcement, the husband's estate will be bound, again without his consent, to pay a greater amount than it is legally obligated to pay under the present state of the law. This concept was recently reaffirmed by the United States Court of Appeals for the Fifth Circuit when it said that under the common law the "father is under no legal responsibility to provide for his minor children after his death." [5]

■ Without so deciding at this time, it is our understanding that the common-law duty of a father to support his children terminates as above indicated. The support money awarded by the court under its statutory authority would presumably be subject to these limitations. The husband may give his consent to be bound beyond his legal duty, as he did by the agreement in the instant case. But even assuming general equity jurisdiction in the Domestic Relations Branch to enforce the agreement, it still cannot be made the basis of a support order in an amount greater than that to which he has consented. The court could not read into a contractual obligation of support a legal duty greater than that consented to.

There is no conflict between the present holding and our decision in Posnick v. Posnick, D.C.Mun.App.1960, 160 A.2d 804. In that case we were concerned with the additional jurisdiction garnted the Domestic Relations Branch by the act of September 9, 1959, Code 1951, 11–762 (Supp. VIII). [6] We there held that this amendment to the

basic act gave the court power in divorce actions "to adjudicate all property disputes between the parties." But we are not here concerned with the adjudication of property disputes. The parties here have settled and apportioned their property and no relief is asked on that phase of the matter. This proceeding, other than the claim for support, is simply an attempt to modify and enforce provisions that require the husband to take certain actions in reference to two insurance policies, to exhibit his Will to the wife, to set a date for his payment of camp expenses for the children, and to set up a trust fund for their college education.

It may be deemed quite desirable that the Domestic Relations Branch should have general equity jurisdiction in all domestic relations matters, but that is a question to be decided by Congress.

The majority adheres to its former decision. We reverse insofar as the proceeding involves a requested increase for the support of the children during their minority and affirm in all other respects.

It is so ordered.

CAYTON, Acting Judge (concurring in part, and dissenting in part).

My views are expressed in the separate opinion I wrote to accompany the majority opinion of this court on November 4, 1959. I do not agree with the disposition now being made of the case. I do not agree that the children are to be limited to their claim for increased support money and that all their other demands should be dismissed without a trial. I do not think such a result can be squared with the decision of the United States Court of Appeals in the Thomason case, or with the action of that court in vacating the earlier decision of this court in this case.

My position is strengthened, at least in part, by the recent decision in Jackson v.

4. 2 Nelson, Divorce and Annulment, § 14.-80.

5. Gessler v. Gessler, 5 Cir., 273 F.2d 302, 305. See also Blades v. Szatai, 151 Md.

644, 135 A. 841, 50 A.L.R. 232; Gardine' v. Cottey, 360 Mo. 681, 230 S.W.2d 731, 18 A.L.R.2d 1100.

6. See footnote 1, supra.

Jackson, D.C.Cir., 276 F.2d 501, 504, No. 15,163, decided March 10, 1960, where it was said that the primary obligation of the father is to be measured by the "welfare and needs of the children, in the past as well as the present and the future, * * * and having in mind also the situation of the parents and any other relevant factor."

I would require the father to meet and answer plaintiff's claim in a trial on the merits.