**June R. GELMI, Appellant,**

v.

**Ottavio GELMI, Appellee.**

**No. 2712.**

Municipal Court of Appeals for the District of Columbia.

Argued May 2, 1961.

Decided July 20, 1961.

John Alexander, Washington, D. C., with whom Walter W. Johnson, Jr., Washington, D. C., was on the brief, for appellant.

Arthur B. Hanson, Washington, D. C., with whom Samuel J. L'Hommedieu, Jr., Washington, D. C., was on the brief, for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11–776(b).

QUINN, Associate Judge.

The parties, husband and wife, became estranged in the fall of 1957. Some six months after their separation they executed an agreement purporting to settle their various marital rights. Of the twelve provisions, four related to the custody and maintenance of the parties' infant daughter, then almost three years old. Paragraph 3 of the agreement committed "legal custody" of the child to appellant; paragraph 4 divided "physical custody" between the parties, eight months with appellant and the balance with appellee; and paragraph 5, the center of the present controversy, contained appellee's pledge of financial support. It was there stated:

"The husband shall assume the obligation to support the wife and child in the amount of Fifty ($50.00) Dollars per month, payable on the fifteenth of each calendar month starting with June 15, 1958. The amount of support and maintenance that the husband shall give to said wife and child shall be increased in the amount of ten percent (10%) per annum of any increase the husband receives above the sum of Three Thousand Six Hundred ($3,600.-00) Dollars per annum provided that in no event is the husband obligated to support the child in excess of One Hundred Fifty ($150.00) Dollars a month * * *. *The husband shall assume the full obligation to provide for the tuition and fees of the child's school*, if it should be decided that parochial or other private institutions are in the child's best interest and further provided that he has the right to veto any choice of educational institution. * * *" [Emphasis supplied.]

Finally, paragraph 6 provided for the child's religious training.

The remainder of the agreement, especially those paragraphs numbered 7, 8, and 9, concerned the parties' relations *inter se,* both spouses releasing their respective rights of inheritance and agreeing to honor their separate debts. Under paragraph 9 appellant stipulated further that she waived all claim to maintenance, support, and alimony.

Appellee subsequently instituted suit in the Domestic Relations Branch of the Municipal Court to enforce the agreement, specifically that section of paragraph 4 giving him "physical custody" of the child for a four-month period each year. Appellant answered challenging the validity of the agreement on the ground of mutual mistake, and counterclaimed asking full custody of the child, maintenance for both the child and herself, and suit money.

At trial appellant's effort to nullify the agreement was directed to the provision of paragraph 5 requiring appellee to furnish tuition and fees for their daughter's schooling. In this regard, evidence disclosed that shortly after the agreement was drawn, appellant, who was employed, enrolled the child in a nursery school. When she demanded that appellee pay the tuition in accordance with their agreement, he refused, asserting, as he continued to do at trial, that the obligation to pay school fees and tuition did not apply to nursery school, which he termed a "baby sitting" service. He contended that the clause had reference to a regular secondary school and more advanced educational institutions.

The trial judge resolved this matter in favor of appellant, deciding that the clause was reasonably susceptible of either meaning as proposed by the parties and that this resulted in "a complete, mutual, non-meeting of the minds as to paragraph five of the Agreement * * *." But he restricted the effect of the misunderstanding. Instead of invalidating the entire agreement, he concluded as a matter of law:

"That all the provisions of the Agreement between the parties of May 29, 1958, except paragraph five thereof, are valid and binding between the parties, and except as to the amendment of paragraph four to modify the provision for custody of the minor child.

"That because *the remainder of the provisions of the Agreement are valid,* this Court has no jurisdiction of the claim by the wife for her support and maintenance." [Emphasis supplied.]

The judge then entered an order directing, among other things, that appellee pay $65 a month support for the child and assume all charges connected with her schooling, including in that category summer camp and nursery school. He gave custody of the child for eleven months of the year to appellant, but rejected her claim for main-

tenance, paragraph 9 barring such an award. She asks that we review this determination.

It is appellant's contention that the trial court allowed the remainder of the agreement to stand by default, as it were, refraining from invalidating the entire agreement because of the erroneous belief that it was without jurisdiction to examine those terms pertaining to the parties themselves. Indeed, during the course of the proceedings there was recurrent discussion questioning whether, aside from the Domestic Relations Branch's paramount interest in a child's custody and maintenance, that forum had authority to rescind a separation agreement where circumstances were otherwise appropriate for such relief. The trial judge repeatedly expressed doubt that he had such equitable power, referring to this court's decision in Blumenthal v. Blumenthal, D.C.Mun.App.1960, 161 A.2d 137, since then reversed in David v. Blumenthal, D.C.Cir., 292 F.2d 765.

As we read this opinion of the United States Court of Appeals, the statutes conferring jurisdiction upon the Domestic Relations Branch included the transfer of general equity power not only to adjudicate a child's property rights arising out of the parents' agreement—the exact holding of that case—but also, by fair implication, to determine a spouse's property rights, or the release thereof, as embodied in a disputed separation agreement.

In the light of this holding, the case is remanded for a new trial. The trial court should consider the effect of the invalid paragraph on the entire agreement, determining the question whether the mutual mistake was of such a nature as to warrant complete rather than partial rescission.

Reversed with instructions.