STEPHANIE S. DINGES ET AL. *v.* ELIZABETH KROUSE
DINGES, WILLIAM J. GEISELMAN AND BANK OF
HANOVER AND TRUST CO., PERSONAL
REPRESENTATIVES OF THE ESTATE OF
WILTON C. DINGES, SR.

[No. 1195, September Term, 1978.]

*Decided July 10, 1979.*

The cause was argued before MORTON, MOYLAN and MASON, JJ.

*William Graham Boyce, Jr.,* for appellants.

*W. Michel Pierson,* with whom was *David S. Sykes* on the brief, for appellees.

MOYLAN, J., delivered the opinion of the Court.

When Wilton C. Dinges, Sr. died in February, 1974, he left an estate, exclusive of jointly held property and life insurance, in excess of $2,000,000 before taxes. To his daughter, Stephanie Shaw Dinges (the appellant), however, he bequeathed only a weekly "amount which would be equal to the purchasing power of $30.00 per week as determined annually in each year on the first day of the month in which [his] death [occurred] by reference to the cost of living index published by the Department of Labor." On November 22, 1974, a petition was filed in the Orphans' Court of Baltimore County by Stephanie through her mother and next friend, Catherine Dallam Dinges, contending that this bequest in the will did not comply with a written agreement entered into between the deceased and Stephanie's mother in which the deceased agreed to provide for the maintenance and support of Stephanie in his last will and testament. The petition prayed that the amount of money payable to Stephanie be increased based on her needs. The petition further sought the payment out of the estate of $1,400 in tuition fees to Maryvale Trinity College Preparatory School for the 1974-75 school year under another provision of the written agreement. The Orphans' Court referred the matter to the equity court for

construction of the contract and determination of the validity of the claims. On September 28, 1974, the equity court issued an opinion construing the contract and disallowing both claims. This appeal follows from that judgment.

Stephanie's father was married four times. Stephanie's mother was his third wife. They had two children — Stephanie and Richard. Stephanie's father had another son by his second marriage. Stephanie's mother and father were divorced on December 20, 1960, when Richard was two years old and Stephanie was eight months old.

In 1968, Stephanie's mother filed a petition seeking an increase in alimony and child support. After the taking of the depositions of Mr. Dinges and his accountant, who is now the president of the companies controlled by the deceased during his lifetime, negotiations were entered into between the parties which resulted in an agreement dated March 21, 1968. The agreement provided:

> "*FIRST*: That the said Wilton C. Dinges agrees to pay the tuition for private schools for either Richard D. Dinges and/or Stephanie Shaw Dinges, provided that attendance at private school is deemed advisable by the public school counsellors. However, the said Wilton C. Dinges reserves the right to select the school.
>
> *SECOND* : That the said Wilton C. Dinges agrees to provide for the maintenance and support of the aforesaid minor children by Last Will and Testament until they shall attain the age of twenty-one years, marry or become self supporting."

The parties further agreed that Mr. Dinges would be permitted to claim the children as exemptions on his income tax returns. A consent order was also entered five days later in the Circuit Court of Baltimore City modifying the divorce decree to provide that Mr. Dinges was to pay to his former wife the sum of $175 per week as alimony and $28 per week for the support and maintenance of each of the two children. It also provided that Mr. Dinges would have the right to visit with Richard during certain specified times.

During her father's lifetime, Stephanie attended public schools. In September, 1974, seven months after her father's death, she was enrolled in Maryvale. She attended Maryvale for the school year 1974-75. The second semester at Maryvale, however, left Stephanie, according to her mother, "emotionally overwrought." She was unable to continue at the school. The following fall, she was treated on an out-patient basis at the clinic at Sheppard Pratt Hospital.

The bill for Maryvale was $1,400, consisting of $1,000 in tuition and $400 for an annual pledge. Stephanie's mother sought payment of the bill from her former husband's estate under the agreement of March 21, 1968. The personal representative of the decedent's estate refused to pay the bill. The estate contended that the deceased's right to select the school was a condition precedent to payment of tuition and that since the condition was not met during his lifetime, the claim could not survive his death. The lower court found that the payment of any bill for private school was contingent both upon the deceased's right to select the school and upon public school counsellors' recommendation that the child attend private school. The court held that neither condition was met.

Regardless of whether or not the parties intended that the duty to pay tuition for private school survive Mr. Dinges's death, it is clear that the decision to enroll Stephanie at Maryvale was that of Stephanie's mother. At the time of Mr. Dinges's death, Stephanie was attending the eighth grade at Dumbarton Junior High. Mrs. Dinges felt, however, that she was not getting the education that she needed at Dumbarton. She had been under the care of a psychiatrist during that year. After consulting with Stephanie's psychiatrist, Mrs. Dinges felt that Stephanie could receive a better education at Maryvale. It was under those circumstances that she was enrolled at the school. Mrs. Dinges admitted that she was not advised by the counsellor at Dumbarton to enroll her daughter in private school. Under the circumstances, a condition precedent to the payment of tuition fees was clearly not met.

The appellants strongly argue, however, that even if the tuition fee is not payable under the first provision of the

agreement, it should, nevertheless, be considered under the second provision. The appellants argue that the $30 per week allowance in Mr. Dinges's will for Stephanie's support and maintenance, increased annually by the increase in the cost of living, is a breach of the agreement. They acknowledge that the common law obligation of a parent to support his child ceases upon the parent's death, *Blades v. Szatai,* 151 Md. 644, and *Hood v. Hood,* 138 Md. 355, but argue that the agreement between the parties makes that rule inapplicable here. They urge that Stephanie should be awarded a minimum support allowance of $250 per week, which would include school and medical expenses, to provide for her needs in light of her station in life and the financial circumstances of her father.

In his last will and testament, Mr. Dinges left a large part of his estate to his son Carl. For Richard and Stephanie, he provided:

> "The Trustees shall, during the minority of Richard Dallam Dinges and Stephanie Shaw Dinges, my children, pay to or for their support, care and education, such amounts of the income not disposed of by sub-paragraph (b) immediately preceding this paragraph, as the Trustees shall deem proper; provided, however, that in no event shall either child receive more than an amount which would be equal to the purchasing power of $30.00 per week as determined annually in each year on the first day of the month following the month in which my death occurs by reference to the cost of living index published by the Department of Labor of the Government of the United States of America...."

He additionally provided that Richard would receive one-sixth of the trusts set up for Carl and Richard after he was 21 years old. He, however, made no other bequests to Stephanie. The weekly bequest to Stephanie now amounts to $39.52.

There is no question that a contract, supported by adequate consideration, providing that a certain testamentary disposition will be made, may be specifically enforced in

equity. *Moats v. Schoch,* 24 Md. App. 453, 464. The agreement here, however, was ambiguous and susceptible of different interpretations. The court, therefore, was obliged to construe the contract to determine the intention of the parties. *Kramer v. Kramer,* 26 Md. App. 620. In so doing, the court could consider such extrinsic factors as the character of the contract, its object and purpose, the circumstances surrounding the making of the agreement and the conduct of the parties. *Canaras v. Lift Truck Services,* 272 Md. 337; *Parkinson v. Parkinson,* 42 Md. App. 650 (1979).

The evidence indicated that when the agreement was made and the consent order was signed in 1968, Mr. Dinges had just undergone delicate brain surgery. His health was very poor. Stephanie's mother no doubt was aware that he might not live long. In his deposition, Mr. Dinges indicated that he had only seen Stephanie on one occasion. He sought no visitation privileges with her. The consent order only provided for visitation with Richard. It is quite probable that under the circumstances Stephanie's mother did not expect any specific bequest for Stephanie should her father die. Considering his poor health, she was, therefore, apparently willing to forego a higher amount in immediate child support in return for some sort of guarantee that support payments for Stephanie would continue after her father's death. The assurance of support payments after her father's death clearly gave Stephanie something to which she would not otherwise have been entitled.

The amount Mr. Dinges provided in his last will and testament for Stephanie's support was similar to that which he had been providing for her during the last six years of his life pursuant to the consent order. The court found that the parties intended that this amount be payable after Mr. Dinges's death. "A determination [by the lower court] as to the intention of the parties is a determination of fact, which an appellate court is not at liberty to set aside or ignore unless it concludes that the finding is clearly erroneous." *Parkinson v. Parkinson, supra.* The evidence that Stephanie's father was in extremely poor health at the time the agreement was

signed, that during his lifetime he showed no particular concern for his daughter, that the agreement provided assurance of support payments beyond her father's death to which Stephanie otherwise would not have been entitled, that the agreement and consent order were signed at about the same time, and that the will provided for an amount similar to that in the consent order amply support the court's finding that the parties intended that Mr. Dinges's estate continue to pay only the amount he had been paying while he was alive. We cannot say that such finding was clearly erroneous.

*Judgment affirmed; costs to be paid by appellants.*