## AMERICAN FEDERATION OF TEACHERS v. YALE
## LUBMAN ET AL.

[No. 66, September Term, 1981.]

*Decided October 9, 1981.*

The cause was argued before GILBERT, C. J., and LOWE and WEANT, JJ.

*Joel A. Smith,* with whom were *Jeffrey H. Scherr* and *Abato & Abato, P.A.* on the brief, for appellant.

*Stephen M. Silvestri,* with whom were *Gil A. Abramson* and *Semmes, Bowen & Semmes* on the brief, for appellees.

GILBERT, C. J., delivered the opinion of the Court.

## — INTRODUCTION —

This appeal is the outgrowth of an attempt by some of the membership of the Classified Municipal Employees Association of Baltimore City, Inc. (CMEA) to affiliate with the American Federation of Teachers (AFT).

Claiming that the affiliation, as accomplished, was illegal, seven members of the CMEA brought an action in the Circuit Court of Baltimore City for declaratory and injunctive relief against CMEA. On motion, AFT was permitted to intervene as a party defendant.

Following a trial on the merits, CMEA and AFT appealed to this Court. Subsequently, CMEA voluntarily dismissed its appeal with the result that AFT stands as the sole appellant.

## — THE FACTS —

CMEA is a labor association organized as a Maryland non-stock corporation. The organization consists of about 4500 employees of the Mayor and City Council of Baltimore, and it is empowered by its charter to improve the working conditions of its members and to represent its members in all matters regarding employment.

Prior to November 4, 1980, CMEA was not affiliated with any other labor organization, although for approximately one year before that date, members of the CMEA had been negotiating with AFT regarding possible affiliation. "[A] tentative affiliation agreement with AFT" was presented on August 15, 1980, at a general membership meeting. The proposed affiliation with AFT was defeated by the membership.

At the time of the August 15 meeting, the by-laws of CMEA provided that affiliation could be effected by approval of a majority vote of the Board of Governors, the By-Laws

Committee,[1] or the Council, after which it was necessary to obtain a ratification of two-thirds of the members attending a regular or special meeting of the association.[2]

Notice of the meeting and the intent to affiliate was required to be published in the *Hall Light* (the CMEA news-letter) or mailed to members individually at least two weeks before the meeting. After the August 15, 1980, meeting, there were attempts to amend the by-laws pertaining to affiliation.

At a special general membership meeting on October 15, 1980, an attempt to amend the by-laws again failed. Seemingly undaunted by the membership's rejection, the Board of Governors called for another special general membership meeting to be held on November 4, 1980, for the purpose of amending the by-laws.[3] Due notice of the meeting, together with a copy of the proposed amendments to the by-laws, was mailed to the membership on October 25, 1981.

The results of the November 4 meeting of the CMEA concerning the by-law dealing with "affiliation" is the nub of this appeal. The evidence shows that the proposed by-laws change was brought before the membership by Mr. Gilbert

---

1. The By-Laws Committee consisted of five members appointed by the president in accordance with the provisions of the by-laws.

2. In pertinent part, the by-laws in effect on August 15, 1980, read:

### "ARTICLE X

#### Amendments to By-Laws

Section A — Amendment Procedures — The By-Laws can be amended at any general or special general meeting of the Association by a *two-thirds vote of those attending members* provided the proposed amendment has been approved by either a majority vote of the By-Laws Committee, the Board of Governors or the Council. After a proposed by-law amendment has been approved, said amendment shall be forwarded to the President of the C.M.E.A. who shall cause said proposed amendment to be placed on the agenda of the next general or special general meeting *provided that said amendment has first been published in the Hall Light or mailed individually to members at least ten (10) days prior to said meeting....*" (Emphasis supplied.)

3. Although there were extensive amendments to the by-laws proposed, the only section at issue here is the affiliation process, so it is the only one we shall discuss.

Selden, the chairman of the By-Laws Committee.[4] The amendment relative to "affiliation" was read to the members who were in attendance. The amendment provided:

"ARTICLE II

Purposes and Methods

Section C. Affiliation — Whenever the Board of Governors in its opinion deems it beneficial to the Classified Municipal Employees Association to affiliate with another employee organization, it shall initiate and conduct negotiations with such organization concerning affiliation. Final action to affiliate must be ratified by a *majority vote of the members.*"

The effect of the Selden amendment was to change the vote necessary to affiliate with another group. The "old" by-law called for approval by two-thirds of the members in attendance. The amendment provided for a simple majority of the members, present or not.

Following Mr. Selden's presentation, "oral amendments" were offered by Mr. Stanley Walpert. The Walpert amendments in essence would have changed the requirement for approval of affiliation from a majority of the *entire* membership to a majority of the members *present.*

It is apparent from the record that the membership meeting became confused. Various motions were offered to stop any attempt to amend the by-laws. The evidence reveals, however, that the proposed by-laws as modified by the Walpert amendments were passed by a vote of 78 to 38.[5]

Having achieved the necessary numbers to change the by-law, the agenda was then amended to include a vote on a proposal to affiliate with AFT. The motion to affiliate

---

4. *See* n. 1, *supra.*

5. In addition, 427 members voted by proxy for approval. While appellees disputed the proxies voted at trial, those votes are not at issue in this appeal.

was, not unexpectedly, passed, and the next day, November 5, 1980, CMEA signed an affiliation agreement with AFT.

The appellees [6] sought relief in equity by way of a declaratory judgment and an injunction.

The court issued an *ex parte* order that enjoined any transfer of funds from CMEA to AFT and also proscribed any action in furtherance of the affiliation agreement.

After a hearing on the merits, Judge Joseph H. H. Kaplan issued a "Memorandum Opinion and Order" in which he declared *inter alia* that the affiliation agreement was null and void because the Walpert amendments were improperly considered, voted upon, and passed at the November 4 meeting. The result of the invalidity of the Walpert amendments is that the amendment providing for a majority vote of the entire membership in order to ratify any affiliation is still viable.

## — MOTION TO DISMISS —

Ere we turn our attention to a discussion of the merits, we must consider the appellees' motion to dismiss AFT's appeal.

Appellees argue initially that the appeal should be dismissed because AFT lacks standing, and that the issues have become moot upon the withdrawal of CMEA from the appeal. We disagree.

Were the law as the appellees seem to view it, the intervenor's fate would be contingent upon a party's willingness or not to appeal. If the party, for whatever reason, elected to abide by the result of the trial, the intervenor's rights would be foreclosed. That is not the state of the law of this State.

The Court of Appeals has made clear that when a court permits intervention, the intervenor has all the rights of a party. " 'By the very definition of ' "intervention" ' the

---

**6.** The appellees are: Yale Lubman, Verl Sexton, Dorothy V. Judy, David Koenigsberg, Rayan Danko, Howard C. Clemm, and Laray Brown, all members of the CMEA.

intervenor is a party to the action. After intervention he is as much a party to the action as the original parties, and to make his rights effectual he must necessarily have the same power as the original parties, subject to the authority of the court reasonably to control the proceedings in the case.' 59 Am. Jur. 2d *Parties* § 177 (1971)." *Montgomery County v. Supervisor of Assessments,* 275 Md. 58, 62-63, 337 A.2d 679 (1975).

This Court, in *Montgomery County v. Meany,* 34 Md. App. 647, 650, 368 A.2d 1107, 1109 (1977), said, "As an intervenor has all the rights as a party and a party has the right to appeal, [the intervenor] has the right to appeal."

The holdings of *Montgomery County v. Supervisor of Assessments, supra,* and *Montgomery County v. Meany, supra,* when syllogized appear as follows:

> A is a party litigant and may appeal an adverse decision.
>
> I is an intervenor with the same rights as A.
>
> ∴ I may appeal.

The motion to dismiss the appeal is without merit, and it will be denied.

## — THE MERITS —

Appellant posits three issues to this Court. We shall, however, reduce that number to one basic question, *videlicet*: were the Walpert amendments properly considered and voted upon at the meeting held on November 4, 1980? [7]

CMEA's by-laws provide that no amendment to a by-law may be voted upon unless two prerequisites are satisfied: 1) the proposed by-laws must be approved by either the

---

[7]. The provision for amending the by-laws of the CMEA is clear, direct, specific, and concise. We perceive no reason to address the appellant's argument that the trial "court's principal finding seriously undermines the right of shareholders or members to participate in the governance of business corporations." We note, however, that the trial court did not do any such thing. On the contrary, it assured that the rights of *all* the members were protected.

By-Laws Committee, the Board of Governors, or the Council, and 2) the proposed amendment must either be published in the *Hall Light* or mailed to individual members at least ten days prior to the meeting. The by-laws further provide that "Roberts Rules of Order shall govern the proceedings of this Association in all cases to which *they are not inconsistent with these By-laws."* (Emphasis supplied.) [8]

AFT strenuously argues that the propriety *vel non* of the Walpert amendments should be determined by *Roberts Rules of Order,* § 56, which provides that when extensive changes in by-laws constituting a "revision" are offered, "the assembly is not confined to consideration of only the points of change included in the proposed revision."

The trial judge determined that the CMEA by-laws prevailed over *Roberts Rules* in this case because the by-laws express the clear intent of the drafters that notice be given of any by-law amendments. "By-laws are construed under principles governing the construction of . . . contracts, primarily to effectuate the parties' intent." 18 C.J.S. *Corporations* § 183, p. 594 (1939).

The court found that inasmuch as the Walpert amendments were introduced without prior notice to the membership, they were improperly introduced and voted upon at the meeting of November 4, 1980. The committee's proposed by-laws providing for a majority vote of the membership to approve an affiliation, as we have said, were properly adopted. That being the situation, the affiliation motion failed because it was not passed by a majority of the membership.

Contrary to the way AFT sees it, a determination by a lower court with respect to the intention of the parties is a factual finding which an appellate court will not set aside unless it concludes that those findings were clearly erroneous. Md. Rule 1086; *Dinges v. Dinges,* 43 Md. App. 50,

---

8. By-Laws, Article XV.

402 A.2d 1321 (1979). We are unable to so conclude in this case.

> *Motion to dismiss denied.*
> *Judgment affirmed.*
> *Costs to be paid by appellant.*