691 A.2d 776

**A.B. CHISHOLM**

v.

**HYATTSTOWN VOLUNTEER FIRE DEPARTMENT, INC.**

**No. 1150, Sept. Term 1996.**

Court of Special Appeals of Maryland.

April 1, 1997.

Mark J. Donohue (James J. Cromwell, J. Bradford McCullough and Miles & Stockbridge, on the brief), Rockville, for Appellant.

James A. Hyatt (Daniel K. Tregoning, on the brief), Germantown, for Appellee.

Argued before WENNER and CATHELL, JJ.,
MARSHALL A. LEVIN, Judge (retired), Specially Assigned.

CATHELL, Judge.

Avon B. Chisolm, appellant, was elected to "lifetime" membership in the Hyattstown Volunteer Fire Department, Inc. (HVFD or the Department), appellee, in 1987. In February of 1994, HVFD expelled appellant "for actions detrimental to the best interests of" the Department.[1] Appellant filed suit against HVFD in the Circuit Court for Montgomery County, challenging his expulsion. Following the presentation of appellant's case, the circuit court granted a partial motion for judgment in favor of HVFD; at the conclusion of the court trial, the court rendered judgment in favor of HVFD. Appellant noted a timely appeal; he presents three questions for our review:

 I. Do corporate by-laws constitute a contract, and did the circuit court therefore err when it ruled that

---

[1] The sole overarching question presented by this appeal is whether the Department properly expelled appellant from membership. The reasons why charges were brought against appellant by another Department member are not relevant to this appeal, and, therefore, will only be addressed to the extent necessary to understand the issues actually presented. In rendering our decision, we take no position as to whether charges should have been brought against appellant in the first instance or whether he should have been expelled because of that conduct.

HVFD's bylaws were not a contract and, on that basis, granted HVFD's motion for judgment on counts II [breach of contract] and IV [specific performance]?

II. Did HVFD's by-laws clearly and unambiguously provide for lifetime members who cannot be dropped from the membership and the circuit court therefore err in ruling that Chisolm could be expelled from that special membership?

III. Was Chisolm's right to fundamental fairness ... violated by the presence of Douglas Edwards on the trial board?

## The Relevant Facts

HVFD is a nonprofit, nonstock or membership corporation. Its bylaws, in Article IV, Section 4, set forth eight classifications of members. Lifetime membership is a subclass of Special Memberships. Article IV, Section 5.8.I. provides this description of lifetime membership:

Lifetime membership may be conferred by a majority vote of the members present at any regular meeting of the Department, upon any member who has attained fifteen (15) active years in the Hyattstown Volunteer Fire Department, Inc.. [sic] Lifetime members shall not be dropped from the rolls of the Department. They shall be granted the privilege of the floor but shall be exempt from the annual payment of dues, have no vote, not hold Department office and not participate in fire/rescue operations unless such member meets the requirements of subsection (A) of this Section.

A. Lifetime members may pay the annual dues and, therefore, be entitled to all the benefits and privileges of an active member.

Article XV of the bylaws sets forth the procedures by which a member of the Department may be disciplined. In relevant part, it provides:

A member may prefer formal charges against any member of the Department ... for any ... cause considered detrimental to the best interest of the Department.

. . . .

A Trial Board consisting of members in good standing of the Department shall be convened to hear and decide formal charges brought against members.... A Trial Board of seven (7) members shall be selected by lottery, with both the charging member and the member being charged in attendance.... After the Trial Board is selected, the Secretary shall notify the members selected, in writing, within five (5) days, with a trial to be held within ten (10) days. A quorum of at least five (5) of those members selected shall proceed with the trial. At no time shall the accused, the accuser, or any family members of those persons be permitted to serve on the Trial Board.

At such hearing the member so charged shall be afforded an opportunity of being heard in their own defense, and may receive assistance in presenting their defense from members of the Department, and shall have the right to bring in witnesses....

Upon hearing the evidence on the charges, the Trial Board shall either find the member not guilty or guilty and if guilty, may impose whatever disciplinary action the Trial Board deems appropriate except for expulsion from the Department. The Trial Board may recommend to the Department membership expulsion from the Department at the next regular meeting of the Department following the completion of the hearing.

On December 13, 1993, Scott Testerman, HVFD's vice president, filed formal charges against appellant. A Trial Board was convened, and that board found appellant "guilty" of misfeasance. The Trial Board recommended to the general membership that appellant be expelled from the Department, the membership voted to follow that recommendation, and appellant was thereafter expelled from the Department.

On April 14, 1995, appellant filed suit against HVFD. His Third Amended Complaint contained four counts that alleged and/or sought: 1) declaratory relief;[2] 2) breach of contract; 3) wrongful discharge; and 4) specific performance. Prior to trial, HVFD filed a Motion for Summary Judgment on all issues. At the conclusion of the hearing thereon, the circuit court ruled:

I find specifically that ... the provision under "Membership Classes," paragraph number 8, "Special Membership Classes," the provision that says, "Lifetime members shall not be dropped from the rolls of the Department," refers specifically to the fact that they are not required to pay dues; and, therefore, cannot be dropped from the rolls for not paying the dues, and that that is the purpose of the lifetime membership.

I find that Article XV, dealing with discipline, is separate and that the remedy, any of the remedies available under the discipline provisions are available as to any member no matter what their classification is.

. . . .

So on the threshold question, I am finding that he [appellant] was subject to the same provisions as any other member, under the "Discipline" section, including expulsion.

The court then ordered the parties to proceed to trial on all of the remaining issues.

A three day bench trial commenced on June 3, 1996. At the close of appellant's case, the Department made a motion for judgment. The court granted the Department's motion as to counts 2) breach of contract; 3) wrongful discharge; and 4) specific performance. The court reserved ruling upon count 1, which sought a declaratory judgment "that the actions of the

---

**2.** Appellant, in part, sought a declaration "that the actions of the Trial Board are null and void, that the actions of the Hyattstown Volunteer Fire Department, Inc., in expelling him from membership in the department is illegal and that he be reinstated to his lifetime membership status with the Hyattstown Volunteer Fire Department with all the rights and privileges appurtenant thereto."

Trial Board are null and void, [and] that the actions of the . . . Department . . ., in expelling him from membership in the department [were] illegal." In pertinent part, Judge Scrivener ruled:

I do not find that Mr. Chisolm was an employee of the Hyattstown Volunteer Fire Department and, therefore, cannot be subject to a wrongful discharge action since there is no employer-employee relationship.

With respect to counts 2 and 4, breach of contract and specific performance, I find that there is no contract in this case. So, therefore, there can be no breach of contract or specific performance.

I do not find that the bylaws constitute any kind of contract which would give rise to an action either for breach of contract or specific performance under this case. I am denying the motion with respect to count 1. I will hear from the defense witnesses on that.

Following the presentation by HVFD, the court ruled:

I have consistently ruled . . . that the Court['s] role in this trial is to determine whether or not the actual procedures that were followed were fair and reasonable and whether or not essential fairness was preserved throughout the proceedings [before the Trial Board]; both as to what the bylaws say should be done and what in fact was done in this case.

. . . .

I do not find that there is any bad faith on the part of anyone. . . .

. . . .

I think each of them was acting in good faith. And, certainly, the Court is aware that this was not a criminal proceeding, nor was the proceeding in front of the trial board a criminal proceeding. Many of the procedural safeguards which we would certainly require in a criminal case are not present in this case.

. . . .

In summary, I find that fundamental fairness was preserved in the procedures that were followed by the Hyattstown Volunteer Fire Department. I am not holding them to the same standard I would if it were a court proceeding.

And mindful of all of the testimony and exhibits which I have reviewed thoroughly throughout this trial, I am going to deny [the] relief requested by the plaintiff [appellant]. I do believe that fundamental fairness was preserved throughout that procedure.

On July 5, 1996, appellant filed a timely Notice of Appeal.

### Do HVFD's bylaws constitute a contract that will support a claim for breach of contract and specific performance?

Appellant contends that HVFD's bylaws constitute a contract between the Department and its members, and, therefore, the circuit court erred in granting the Department's motion for judgment as to the counts that alleged a breach of contract, count 2, and sought specific performance, count 4.[3] Appellant cites three cases in support of his assertion that the Department's bylaws constitute an enforceable contract between HVFD and its members: *Chevy Chase Sav. & Loan v. State*, 306 Md. 384, 509 A.2d 670 (1986); *Spence v. Medical Mut. Liab. Ins. Soc'y*, 65 Md.App. 410, 500 A.2d 1066 (1985), *cert. denied*, 305 Md. 621, 505 A.2d 1342 (1986); and *Anne Arundel Gen. Hosp. v. O'Brien*, 49 Md.App. 362, 432 A.2d 483 (1981). These cases are, however, inapposite. Two of the three involve for-profit corporations, and, more significant, all three involve an underlying contract between the parties and the effect of the corporate bylaws upon that contract. See *Chevy Chase*, 306 Md. at 400, 509 A.2d 670 ("Corporate bylaws, particularly those of a mutual insurer, form part of the contract between the corporation and its policyholders or members." (emphasis added)); *Spence*, 65 Md.App. at 419, 500

---

**3.** Appellant does not challenge the circuit court's granting of HVFD's motion for judgment as to the count that alleged wrongful discharge, count 3.

A.2d 1066 ("A mutual insurance company's charter and by-laws form part of the contract of insurance, regardless of whether they are referred to in the policy." (emphasis added)); *O'Brien,* 49 Md.App. at 370, 432 A.2d 483 (hospital was not required to follow hearing procedures contained in bylaws in terminating exclusive contractual privileges of doctors). None of these cases supports the proposition that the corporate bylaws of a nonprofit membership corporation constitute an enforceable contract between the corporation and its members.

Appellant also directs our attention to 8 Fletcher Cyclopedia Corporations § 4198 (1993). In pertinent part, that section reads:

> In regard to the general relation between the corporation and the stockholder or member, it is the general rule that the bylaws which are in existence at the inception of the relation enter into the contract between the corporation and its stockholders or members or, in the case of a mutual association or fraternal benefit society, the contract between the members, and become an integral part of the contract as a matter of law, or, at least, are in the nature and have the force and effect of a contract, regulating the rights among the members and between the corporation and the members....
>
> ....
>
> A bylaw is not, however, a contract in the strict sense in which the word is sometimes used as designating a formal agreement. [Footnotes omitted.]

While this section does imply that bylaws either constitute a contract or have the force and effect of a contract between the corporation and its members, it does not support the proposition that the expulsion of a member by the corporation gives rise to a cause of action for breach of contract or specific performance.

By way of relief, appellant principally sought money damages, reinstatement in the Department, and counsel fees. Appellant has not, however, pointed us to any authority that

will support his recovery of money damages from the Department upon a theory of breach of contract or specific performance, nor has our research uncovered any. This is because "[t]he obligations imposed by the bylaws of a corporation upon its officers are not such as rest wholly in contract for the breach of which there is an adequate legal remedy." 18A Am.Jur.2d *Corporations* § 331 (1985).[4] Thus, the circuit court did not err in concluding that the bylaws did not constitute an enforceable contract.

 Moreover, regardless of whether or not the Department's bylaws constituted a "contract," the reinstatement of appellant in the Department was not realizable by way of an action for breach of contract or specific performance. Rather, the proper remedy would be a writ of mandamus. Nearly a century ago, in the case of a law student who was expelled from what was then the law school of Baltimore University, the Court of Appeals opined:

> Of course if one voluntarily becomes a member of an incorporated society or association whose by-laws provide for expulsion for specified causes the right of amotion [to be removed] is clearly established in the corporate body and may be duly exercised in the manner and for the purposes prescribed. . . . Want of notice *has* always been regarded as sufficient ground for invoking the aid of *mandamus* in cases of membership in corporations organized for the purpose of business or profit. And now it is generally held that the same rule also applies to the restoration to membership in a private corporation when no pecuniary interests are involved. . . . But in addition to this it is clear the plaintiff has no other adequate remedy at law. He asks and seeks not damages but a restoration to his right to attend the school. . . . An action for breach of contract cannot,

---

4. We do not mean to imply that, when an expelled member has been economically harmed, he can never recover for his loss. Our holding is that an expelled member cannot recover damages that are alleged to have occurred because an incorporated association violated its bylaws based upon a cause of action for breach of contract.

therefore, be considered an adequate remedy. Nor can he have, as suggested, a bill for specific performance, so long as he has an adequate remedy at law to wit, the writ of *mandamus.*

*Baltimore Univ. v. Colton,* 98 Md. 623, 636, 57 A. 14 (1904) (citations omitted).

Similarly, Fletcher Cyclopedia of Corporations also states that the remedy of an expelled member is a writ of mandamus:

> By the overwhelming weight of authority, if a member of a corporation is wrongfully expelled without sufficient cause, or without a hearing, or without reasonable notice and an opportunity to be heard, or without compliance with the provisions of the charter and bylaws, mandamus will lie to compel the corporation to restore the member to membership.

12A Fletcher Cyclopedia of Corporations § 5705 (1993) (footnote omitted).

> Generally speaking mandamus or a proceeding in the nature of mandamus is available as a remedy to a member wrongfully expelled from an incorporated [organization].
>
> Probably most of these decisions are based on the principle set forth in *Lahiff v. St. Joseph's Total Abstinence & Benev. Soc.,* [76 Conn. 648, 57 A. 692 (1904)], that a corporation chartered by the state has privileges and powers expressly granted by it and hence the duties devolved upon any corporation are regarded as being of a public character.

T.W. Cousens, Annotation, *Suspension or Expulsion from Social Club or Similar Society and the Remedies Therefor,* 20 A.L.R.2d 344, 393 (1951) (footnotes omitted) (citations omitted); *accord* 18A Am.Jur.2d *Corporations* § 947 (1985) ("Generally speaking, mandamus or a proceeding in the nature of mandamus is available as a remedy to a member wrongfully excluded or expelled from a corporation." (footnote omitted)); *see generally* 14 M.L.E. *Mandamus* §§ 51–55 (1961, 1997 Cum.Supp.).

Writing for the Court of Appeals in *Freeman v. Local 1802, Am. Fed'n of State, County & Mun. Employees,* 318 Md. 684, 692, 569 A.2d 1244 (1990), Judge Eldridge quoted with approval the summary of the law on the writ of mandamus contained in *George's Creek Coal & Iron Co. v. Allegany County Comm'rs,* 59 Md. 255, 259 (1883):

> *"Mandamus* is a most valuable and essential remedy in the administration of justice, but it can only be resorted to to supply the want of some more appropriate ordinary remedy. Its office, as generally used, is to compel corporations, inferior tribunals, or public offi cers to perform their functions, or some particular duty imposed upon them, which, in its nature, is imperative, and to the performance of which the party applying for the writ has a clear legal right. The process is extraordinary, and if the right be doubtful, or the duty discretionary, or of a nature to require the exercise of judgment, or if there be any ordinary adequate legal remedy to which the party applying could have recourse, this writ will not be granted."

While we take no position as to whether appellant would have been entitled to a writ of mandamus in the case sub judice, as set forth by the Court of Appeals some ninety-three years ago in Colton, an expelled member of a corporation who seeks reinstatement, as does appellant, cannot accomplish that end by way of claims for breach of contract or specific performance. Accordingly, we hold that the circuit court did not err when it granted judgment in favor of the Department on these two counts.[5]

### Under HVFD's bylaws, can a lifetime member be expelled?

■ The circuit court, based upon its interpretation of the bylaws, ruled that lifetime members of the Department "can-

---

**5.** To the extent that this is not the precise ground relied upon by the circuit court, "a trial court's decision may be correct although for a different reason than relied on by that court." *Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979), cert. denied, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

not be dropped from the rolls for not paying the dues," but could be expelled otherwise under the disciplinary procedures set forth in Article XV. Appellant avers that, although he could be subjected to discipline under Article XV of the bylaws, he could not be expelled from membership given his status as a lifetime member, because the definition of a lifetime member contained in Article IV, Section 5.8.I states, "Lifetime members shall not be dropped from the rolls of the Department."

In general, "courts will not interfere in the internal affairs of a voluntary membership organization." *NAACP v. Golding*, 342 Md. 663, 672, 679 A.2d 554 (1996). If the organization is incorporated in Maryland, "the business judgment rule applies to decisions regarding the corporation's management." *Id.* at 673, 679 A.2d 554 (citing Md.Code (1975, 1993 Repl.Vol., 1995 Supp.), § 2–405.1 of the Corporations & Associations Article). This rule "insulates business decisions from judicial review absent a showing" of fraud or bad faith. *Id.* In this context, "fraud" has been interpreted broadly "to include 'action unsupported by facts or otherwise arbitrary.'" *Id.* at 677, 679 A.2d 554 (quoting *Martin v. United Slate Etc. Ass'n*, 196 Md. 428, 441, 77 A.2d 136 (1950)). Appellant alleges that, in expelling a lifetime member, the Department acted without the authority of its bylaws or, in other words, took an action it was powerless to take. In that a corporation "has only such powers as are expressly granted by its charter or by statute and such as may impliedly be derived from its corporate purposes," *Babcock Memorial Presbyterian Church v. Presbytery of Baltimore*, 296 Md. 573, 590, 464 A.2d 1008 (1983), *cert. denied*, 465 U.S. 1027, 104 S.Ct. 1287, 79 L.Ed.2d 689 (1984), we must turn to the bylaws in order to determine whether the Department had the power to expel a lifetime member. See *Most Worshipful United Grand Lodge v. Lee*, 128 Md. 42, 49, 96 A. 872 (1916) (where it has been shown that an incorporated organization has instituted proceedings against a member in violation of its own rules, "the Court when called upon will not hesitate to interfere in his behalf").

We first note that " '[b]y-laws are construed under principles governing the construction of . . . contracts, primarily to effectuate the parties' intent.' " *American Fed'n of Teachers v. Lubman,* 50 Md.App. 13, 19, 435 A.2d 801 (1981) (citation omitted). If the bylaws at issue here are plain as to their meaning, there is no room for construction. *GMAC v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985). A contract is not ambiguous merely because the parties cannot agree as to its proper interpretation. Furthermore, "general words used in an instrument are restricted by the context in which they are used, and are construed accordingly." *King v. Bankerd,* 303 Md. 98, 106, 492 A.2d 608 (1985).

We also note that, in general, an organization, such as HVFD, "may accept or refuse members as it chooses, subject only to its constitution, charter and by-laws." *Grempler v. Multiple Listing Bureau,* 258 Md. 419, 426, 266 A.2d 1 (1970). Furthermore, a membership corporation has an inherent power to remove members:

> [I]n regard to the expulsion or suspension of members of nonprofit or nonstock corporations[, s]uch organizations possess inherent power to expel or suspend members for good cause, provided, as a rule, that the member is notified of the charges and there is a hearing and an opportunity to defend. In addition, a nonstock or membership corporation may adopt bylaws governing expulsion therefrom. . . .
>
> . . . .
>
> . . . A nonstock or membership corporation also has the right to adopt bylaws specifying causes for expulsion. Members of a corporation have been deemed to be bound by corporate bylaws and regulations as to expulsion because of assent thereto upon joining the corporation. . . .

The law is settled that a corporation possess the power to remove a member, officer, or director for cause, regardless of the existence of a provision in the charter or bylaws providing for such removal. The power to disenfranchise

members of a nonstock or nonprofit corporation for such causes is said to be inherent in the corporation....

18A Am.Jur.2d *Corporations* §§ 935–37 (footnotes omitted).

Turning to the Department's bylaws, the critical point is the provision that states, as previously quoted, "Lifetime members shall not be dropped from the rolls of the Department," and its relationship to Article XV, which allows for the expulsion of members. Appellant avers that "[t]he lower court's ruling ... renders meaningless the [lifetime member's] right not to be dropped from the rolls, and indeed renders meaningless the very status of a lifetime member." To the contrary, HVFD argues that the circuit court's "interpretation promotes the welfare of the corporation by allowing lifetime members ... to remain in the corporation even if they do not pay dues. While ... allow[ing] the corporation to expel a lifetime member for cause under the Discipline section."

According to the bylaws, membership in the Department is open to "[a]ny resident in the vicinity of Hyattstown, 18 years of age or older." Upon being voted into membership, a member is recognized as being in one of eight "Membership classes" with a "Membership Status" of either "Active" or "Inactive." Pursuant to Article V, Section 1, each member has to pay "[a]nnual dues of $5.00." Article V, Section 3 provides one manner in which membership can be terminated:

> At the annual meeting of the Department, the Recording Secretary shall report to the membership the names of all members whose dues are in arrears. By a majority vote of the active members present, *any member whose dues are in arrears may be dropped from the rolls of the Department.* [Emphasis added.]

The only other manner by which the Department can effectuate the termination of a membership is by resort to Article XV, the Discipline provision.

Reference is made to "the rolls" of the Department three times in the bylaws, the immediately proceeding quotation being one of them. Another is contained in Section 8 of Article IV:

Any members serving in the active services of the Armed Forces of the United States *shall be carried on the rolls* in their present class and status at the time of induction into the Armed Forces. [Emphasis added.]

This is qualified by Article V, Section 5:

Members serving on active duty in the Armed Forces of the United States shall not be required to pay dues.

Reading these three sections *in pari materia,* Department members who are on active duty in the armed forces will not be dropped from the rolls of the Department for the nonpayment of dues. Thus, as used here, an armed forces member's privilege of not being dropped from the Department's rolls stems from his or her prerogative not to have to pay dues. Moreover, regardless of where a member is stationed in the armed forces, he or she is carried on the rolls of the Department "in their present class and status." (Emphasis added.) Thus, even though a former active member of the Department may be stationed abroad, for example, he or she will be maintained upon the Department's rolls as an active member even though that member would "not [be] able to take an active part, at all times, in the various activities of the Department"—the very definition of an inactive member. In other words, the Department will consider a member who meets the definition of an inactive member in all respects to be an active member because that member is currently serving in the armed forces. This is important because it illustrates the Department's ability and willingness to draw distinctions and to create exceptions and exemptions in its bylaws where it deems them necessary.

The third reference to the Department's "rolls" is found in the pertinent portion of the previously quoted definition of a lifetime member:

Lifetime members *shall not be dropped from the rolls* of the Department. They shall be granted the privilege of the floor but *shall be exempt from the annual payment of dues,* have no vote, not hold Department office and not participate in fire/rescue operations.... [Emphasis added.]

Lifetime members are, thus, treated in a manner similar to members serving in the armed forces—i.e., they are maintained on the rolls of the Department even though they have not paid their dues. This provision merely excuses lifetime members from the payment of dues. Viewing the context in which "the rolls" is uniformly utilized in the bylaws and reading all of these provisions in *pari materia,* as we must, in each instance where reference is made to a member being carried or dropped from the rolls of the Department, that reference relates to whether or not a member has paid his or her annual dues. Accordingly, we hold that the circuit court was correct when it ruled that "the provision that says, 'Lifetime members shall not be dropped from the *rolls of the* Department,' refers specifically to the fact that they are not required to pay dues."

■ As previously mentioned, apart from the nonpayment of dues, the only manner through which the Department may terminate a member is the disciplinary provisions of Article XV. The Article draws no distinctions between and among the numerous classes of members as to which may be subjected to discipline in the first instance or as to the sanctions that may be imposed in the second. Rather, the bylaws provide: "A member may prefer formal charges against *any member* of the Department." (Emphasis added.) Section 6 continues:

Upon hearing the evidence on the charges, the Trial Board shall either find *the member* not guilty or guilty and if guilty, may impose whatever disciplinary action the Trial Board deems appropriate except for expulsion from the Department. The Trial Board may recommend to the Department membership expulsion from the Department at the next regular meeting of the Department. . . . [Emphasis added.]

By their plain language, these sections apply to all members of the Department without regard to class or status. Given the Department's proven ability to make distinctions and exceptions in its bylaws, the absence of any such exception here is significant. Harmonizing Article IV, Membership, with Article XV, Discipline, we hold that the Department's bylaws

retained to it the ability to expel even a lifetime member, such as appellant. While a clearer wording of both the definition of lifetime membership and the scope of the disciplinary provisions is advisable, we have interpreted the bylaws *sub judice* to allow for the expulsion of lifetime members for cause. Generally speaking, as noted previously, even when bylaws do not contain the right to expel members for cause, it has been held that that power is inherently retained by the corporation. Simply stated, it is a power the membership corporation needs in order to exist.[6]

### Was appellant's right to fundamental fairness violated by the presence of Douglas Edwards on the Trial Board?

█ Appellant argues that the presence of Douglas Edwards, HVFD's president, on the Trial Board violated his right to fundamental fairness in the Department's proceedings. To understand this assertion, a brief recitation of the facts underlying appellant's dismissal is necessary.

Douglas Edwards was the president of HVFD at the time of appellant's expulsion. In short, charges were lodged against appellant because he had sought to obtain a copy of a report that dealt with allegations that Edwards had committed malfeasance while the president of HVFD. These charges were brought against appellant by Scott Testerman—HVFD's vice president and the chair of the committee that authored the report about Edwards—because it appeared to him that appel-

---

6. Volunteer fire companies, such as HVFD, and like organizations are somewhat unique. It is not uncommon for volunteer members to work alongside professional firefighters, who are County employees. Thus, although not employees, membership in a volunteer fire company is more akin to being an employee than it is to being a shareholder of a for-profit corporation. We note this because, to some extent, appellant's lifetime membership could be compared to lifetime employment. It is clear, however, that a contract for lifetime employment may be terminated for cause at any time. *See Shapiro v. Massengill*, 105 Md.App. 743, 754, 661 A.2d 202, *cert. denied*, 341 Md. 28, 668 A.2d 36 (1995); *Chai Management, Inc. v. Leibowitz*, 50 Md.App. 504, 513, 439 A.2d 34 (1982); *see also Dorrance v. Hoopes*, 122 Md. 344, 350–51, 90 A. 92 (1914).

lant had interfered or had attempted to interfere with his investigation into whether Edwards had acted improperly. Testerman was named to lead the investigation by the Montgomery County Fire Commission, and the report was for the use of the Fire Commission. Based upon the testimony proffered to the trial court, it appears that neither Edwards, the subject of that report, nor appellant were aware of the contents of that report either at the time appellant attempted to obtain it or, subsequently, when the Trial Board heard the matter and decided to recommend appellant's expulsion.

As it relates to the composition of the Trial Board, HVFD's bylaws provide:

> A Trial Board of seven (7) members shall be selected by lottery, with both the charging member and the member being charged in attendance.... At no time shall the accused, the accuser, or any family members of those persons be permitted to serve on the Trial Board.

The circuit court found that these procedures, in conjunction with all the others, preserved the fundamental fairness due appellant. We agree.

In the case *sub judice,* the Department followed the procedures set out in the bylaws.[7] As to the composition of the Trial Board, those procedures were designed to select members to serve on the Trial Board at random, and it was equally likely that any particular member would be selected. At the same time, the procedures, besides eliminating both the accuser, Testerman, and the accused, appellant, also sought to circumvent the participation of those other members most likely to have a bias—*i.e.,* relatives of either the complainant or the accused.

While appellant alleges that Edwards was biased against him, there are no facts supporting that assertion. Instead,

---

7. We do not mean to imply that the procedures utilized by HVFD are the only ones that will protect a member's right to fundamental fairness.

there was uncontroverted testimony that Edwards was not aware of the contents of the report.

When he became a member of the Department, appellant agreed to be judged pursuant to the rules and procedures established in the bylaws. Those procedures were followed. Edwards was chosen by means of the lottery system, and he is not a relative of either appellant or Testerman. He was, therefore, qualified to sit upon the Trial Board that sat in judgment of appellant.

In *Most Worshipful United Grand Lodge v. Lee, supra,* the Court of Appeals opined:

> In matter of discipline, doctrine and internal policy of the organization the rules by which the members have agreed to be governed constitute the charter of their rights, and courts will decline to take cognizance of any matter arising under these rules. Whether the rules have been violated, or whether a member has been guilty of conduct which authorizes an investigation, by the association, or the imposition of the penalty prescribed by it, is eminently fit for the association itself to determine, and, if the investigation is in accordance with its rules, the party charged has no ground of complaint, since it is but carrying into effect the agreement he made when he became a member of the association.

128 Md. at 49, 96 A. 872. We shall, accordingly, affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**