971 A.2d 309

**Michael O. TACKNEY, et al.**

**v.**

**UNITED STATES NAVAL ACADEMY ALUMNI ASSOCIATION, INC., et al.**

**No. 108, Sept. Term, 2008.**

Court of Appeals of Maryland.

May 14, 2009.

K. Donald Proctor (Margaret M. McKee, Proctor & McKee, P.A., Towson, David Cohen, Law Office of David Cohen, Austin, TX), on brief, for Appellants.

John S. Simcox, Chad King (Simcox and Barclay, LLP, Annapolis), on brief, for Appellees.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

This case concerns the propriety of applying the principle of non-intervention [1] to a dispute between individual members of the United States Naval Academy Alumni Association, Inc., Michael O. Tackney, Alfred W. Tate, and James A. Kenney ("Appellants"), and the Association's Board of Trustees. Appellees are the Association and present and former trustees. In this appeal, from a judgment of the Circuit Court for Anne Arundel County, Appellants contend, generally, that judicial intervention is appropriate because the Board acted arbitrarily with regard to the 2006 election of trustees. Appellees retort that the Board's actions were not arbitrary, chiefly because such actions were pursued in good faith and in compliance with the Association's Bylaws. We conclude that the Circuit Court was legally correct in dismissing Appellants' complaint for failure to state a claim for which relief can be granted. Accordingly, we shall affirm the judgment of the Circuit Court for Anne Arundel County.

## I.

The United States Naval Academy Alumni Association, Inc. is a non-profit, voluntary membership organization incorporated under the laws of Maryland as a non-stock corporation. A Board of Trustees manages the Association, and the Associa-

---

1. The principle of non-intervention provides that a Maryland court will not interfere in the internal affairs of a voluntary membership organization "absent fraud, irregularity, or arbitrary action." *NAACP v. Golding*, 342 Md. 663, 678, 679 A.2d 554, 561 (1996).

tion's governing documents consist of a Certificate of Incorporation and Bylaws. An Operating Manual has been adopted by the Board to "support[ ] the bylaws...."

Appellants contend, generally, that the Board acted in derogation of the Association's Bylaws and Operating Manual with regard to the 2006 election of trustees. The gravamen of Appellants' complaint is that Carlisle A.H. Trost, Leighton W. Smith, Jr., and Corbin McNeill are trustees who sat in violation of the tenure provisions of the Association's Bylaws.

The two Bylaws provisions affecting trustees' tenures are § § 4.7 and 4.9. Section 4.9 provides, in pertinent part: "With the exception of the President and Board-appointed trustees,[2] trustees shall serve terms of three (3) years, and may serve up to two (2) consecutive terms." Pursuant to § 4.7, "[t]he immediate predecessor of the Chair serves as a trustee, and assumes that office automatically upon completion of his or her elected term as Chair."

Carlisle Trost, Board Chair, was elected to his position in 2003, having not previously served as a trustee. He was nominated for, and re-elected to, a second consecutive term as Chair in 2006.[3] Appellants contend that the nomination and re-election of Trost in 2006 violated § 4.7 of the Bylaws. They posit that although Trost was permitted to serve two terms as a trustee, § 4.7 limited his second term to holding the position of Immediate Predecessor of the Chair.

Leighton Smith, Immediate Predecessor of the Chair, was first elected as Chair in 1997. Smith was re-elected to a second consecutive term as Chair in 2000, and he was the first Chair since the Association's incorporation to serve more than one term in that position. In 2003, Smith succeeded to the

---

**2.** Neither Trost, McNeill, nor Smith has ever served as President or as a Board-appointed trustee. The term limits for the positions of President and Board-appointed trustees are not at issue in this case.

**3.** Trost's term of office will conclude in May of 2009, as the Bylaws were amended in May of 2008 to eliminate the position of Immediate Predecessor of the Chair.

position of Immediate Predecessor of the Chair.[4] Appellants contend that Smith has served in violation of § § 4.7 and 4.9 of the Bylaws; as to § 4.9, they assert that it limited Smith's service as a trustee to two consecutive three-year terms, for a total of six years.

Corbin McNeill, former Board Vice–Chair,[5] was first elected a trustee in 1999. He was re-elected to the position of Vice–Chair in 2002 and subsequently re-elected as Vice–Chair in 2005. McNeill's longer than normal tenure was approved by the Board as part of a significant revamping of the Board in 1998.[6] Nonetheless, Appellants contend that McNeill's tenure as a trustee violated § 4.9 of the Bylaws.

In addition to the alleged Bylaws violations accomplished by the tenures of trustees Trost, Smith, and McNeill, Appellants maintain that other conduct by the Board with regard to the 2006 election of trustees contravened the Association's Bylaws and Operating Manual. The Bylaws provisions at issue are § § 6.2, 6.3 and 6.5. Section 6.3 provides, in pertinent part:

> To ensure the careful selection of nominees for such offices as Chair and Vice–Chair of the Board ..., a nominating committee of at least seven members will be appointed to evaluate and propose candidates to the Board of Trustees. The Chair of the Board will appoint the nominating committee in June of each year....

Pursuant to § 6.2: "[the nominating] committee[ ] ... may be designated by resolution adopted by a majority of the Board of Trustees. Except as otherwise provided in such designating resolution or other resolution, the Chair of [the nominating] committee shall be a trustee...." Furthermore, § 6.5

---

**4.** Like Trost, Smith's term expires in May of 2009.

**5.** McNeill's service on the Board ended with the expiration of his term in May of 2008.

**6.** In 2004, in response to an inquiry by a trustee as to whether the Bylaws permitted McNeill's final term as Vice–Chair, the Board sought and received an opinion confirming the propriety of the Board's decision.

provides that the "[nominating] committee shall serve at the pleasure of the Board." The applicable portions of the Operating Manual provide that the Board Chair is an *ex officio* member of all standing committees except the nominating committee and that, with the exception of meetings pertaining to "personnel" decisions, committee meetings must be held open to members.

Here, in anticipation of the 2006 election, Trost, as Chair, appointed a nominating committee ("First Nominating Committee") to consider and recommend nominations for the open positions on the Board. Although the First Nominating Committee was headed by a non-trustee, the Board voted to approve the appointment of the committee's chairman. On October 28, 2005, the First Nominating Committee met and voted to submit the names of Trost and another Association member, Thomas V. Draude, as candidates for the position of Chair. After this meeting, the chair of the First Nominating Committee conversed with Trost regarding Trost's views about running in a contested election. According to Appellants, such communications were improper pursuant to the Operation Manual's mandate that the Board Chair shall be an *ex officio* member of all standing committees except the nominating committee.

On November 11, 2005, the First Nominating Committee held a second meeting by telephone. During this meeting, according to Appellants, the committee chairman questioned the propriety of the Draude nomination and how it might be perceived as an insult by Trost. The committee chairman then called for a re-vote on the Draude nomination. By a 4–3 vote, Draude's name was removed from the list of candidates on the slate to be sent to and approved by the Board, leaving Trost as the only candidate for the position of Chair.

Following the removal of Draude from the slate of proposed candidates, Trost disbanded the First Nominating Committee. Appellees contend that Trost did so because inappropriate communications had tainted the committee's integrity. Appellants maintain, nevertheless, that the disestablishment of the

First Nominating Committee, without Board approval, violated § 6.5 of the Bylaws.

In January of 2006, Trost appointed a Second Nominating Committee headed by Leighton Smith, the Immediate Predecessor of the Chair. The Second Nominating Committee also met telephonically, and it submitted only the name of Trost for the position of Chair. According to Appellants, Smith's chairmanship of the Second Nominating Committee constituted a conflict of interest: "If Trost was to be the only candidate on the ballot and was re-elected, Smith's tenure on the Board would perforce continue for a fourth consecutive term as Immediate Predecessor [of] the Chair." (Appellant's Br. 7). In addition, Appellants allege that Smith mandated that any deliberations of the Second Nominating Committee be kept secret, in violation of the Association's Operating Manual. Furthermore, Appellants contend that the appointment of the Second Nominating Committee contravened § 6.3 of the Bylaws, which, they maintain, required the committee's appointment by June of the year preceding the election.

In late January, the Board approved the Second Nominating Committee's recommendation of Trost. Following the Board's approval, in February, a number of Association members voiced concerns to the Board about the nominating process and the tenure violations committed by Trost, McNeill, and Smith. Although these members demanded that an independent analysis be undertaken by someone who had no ties to the Association, the Board allowed the election to proceed. In April, the election was held; notwithstanding a write-in campaign resulting in approximately 41% of the votes being cast for Draude, Trost was re-elected as Chair.

Over one year after the 2006 election, in May of 2007, Appellants Tackney and Tate sent a letter to all trustees complaining about the alleged Bylaws violations and requesting the removals of Trost, McNeill, and Smith, among other trustees. Appellants did so, apparently, because the Bylaws did not set forth any procedures for contesting an election or for challenging the eligibility of a serving or nominated trus-

tee. In response to Appellants' letter, Trost called for an Executive Committee meeting and arranged to obtain a legal opinion from Association member and attorney John Simcox.[7] Mr. Simcox's legal opinion suggested that Appellants' complaints had "no merit."

Following the issuance of the legal opinion, the Board passed a resolution, by a vote of 24 to 2, proclaiming that Trost, McNeill, and Smith were sitting in accordance with the Bylaws. In addition, on October 12 and 13, 2007, the Association's Governance Committee met and considered revisions to the Bylaws that they then proposed to the Board. On December 20, the Board voted to approve the Bylaws revisions proposed by the Governance Committee, including revisions to § § 4.7 and 4.9.

Before the December Board meeting, on November 5, 2007, Appellants filed a Complaint,[8] in the Circuit Court for Anne Arundel County, seeking injunctive relief to undo the disputed elections and declaratory relief to confirm the meaning of the original disputed Bylaws and the alleged invalidity of the amended Bylaws. Numerous motions to dismiss were filed by the defendants, and the court heard oral argument on the motions on April 2, 2008. In a written opinion issued on April 9, the trial court adjudicated all claims in the case. Relying principally on *NAACP v. Golding*, 342 Md. 663, 678, 679 A.2d 554, 561 (1996), the court applied the principle of non-intervention, holding that the facts alleged by Appellants "do not amount to 'fraud, irregularity, or arbitrary' action which [would] permit intervention by a Maryland court."

On April 21, 2008, Appellants filed a motion to reconsider, which was denied. Appellants then filed an appeal to the

---

7. Mr. Simcox is counsel of record for Appellees in this appeal.

8. Initially, only the individual trustees of the Board were named as defendants. On January 18, 2008, an amended complaint was filed naming the Association as a defendant. A second amended complaint was filed on February 12, 2008, adding James A. Kenney as a plaintiff. The second amended complaint is the most recent version thereof and the subject of the instant appeal.

Court of Special Appeals on May 29. We granted Appellants'
petition for writ of certiorari prior to any proceedings in the
intermediate appellate court.[9] Our ultimate task is to decide
whether, pursuant to *NAACP v. Golding*, the actions of the
Board with regard to the 2006 election were sufficiently
arbitrary to warrant judicial intervention.

## II.

Appellants disagree with the Circuit Court's decision to
dismiss this case. Notwithstanding *Golding*, they contend
that judicial intervention is appropriate because the Board
acted arbitrarily. According to Appellants, "[a]ll of the
Board's actions with regard to the 2006 election were arbi-
trary, from the nominating process where numerous Bylaw
violations occurred, to the approval and presentation to the
membership of a single candidate for Chair who was ineligible
for re-election under the Bylaws, and finally to the passage of

---

9. Appellants presented to us the following questions:

 1. Whether *NAACP v. Golding*, 342 Md. 663, 679 A.2d 554 (1996)
 requires a court to intervene when the Board of the Association, a
 Maryland non-stock corporation, clearly violates the Association's
 unambiguous Bylaws so as to deprive the Association's Membership
 of the right to vote for eligible Board leadership?

 2. Whether the action of the Board of an incorporated Maryland
 non-stock membership corporation in violating the Bylaws for the
 purpose of re-electing and entrenching the ineligible Board leader-
 ship is sufficiently arbitrary to deny the Board's actions the deference
 accorded under the business judgment rule and its analog, the rule on
 non-intervention set forth in *NAACP v. Golding*, 342 Md. 663, 679
 A.2d 554 (1996)?

 3. Whether members of an incorporated Maryland non-stock mem-
 bership corporation, which has no established procedures or Bylaws
 governing the manner in which grievances involving voting rights
 shall be heard, decided, or appealed are denied the procedural
 fairness guaranteed under *NAACP v. Golding*, 342 Md. 663, 679 A.2d
 554 (1996), when a committee comprised principally of the alleged
 Bylaw violators against whom the grievance is directed, prescribes
 the method and manner in which the grievance will be handled?

 4. Whether members of an incorporated Maryland non-stock mem-
 bership corporation have standing to assert a direct claim against the
 Board trustees and the Association when they has [sic] been denied
 the right—through violations of unambiguous Bylaw provisions by
 the Board—to elect eligible candidates for Board trustee positions?

a Board resolution in June 2006 allegedly affirming that the Chair, the Vice–Chair, and the Immediate Predecessor were all sitting in accordance with the Bylaws." (Appellants' Br. 18).

In contrast to Appellants' position, Appellees retort that the Board's actions were not arbitrary and do not warrant judicial intervention. As to whether trustees Trost, Smith, and McNeill were sitting in derogation of the Association's Bylaws, Appellees contend that the applicable Bylaws provisions are ambiguous. As to any other arbitrary conduct alleged by Appellants, Appellees assert that such allegations are merely conclusory and do not support a charge of bad faith. For the reasons that follow, we agree with each of Appellees' assertions and shall affirm the judgment of the Circuit Court for Anne Arundel County.[10]

 In reviewing the Circuit Court's dismissal of this case, "we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party." *Converge v. Curran,* 383 Md. 462, 475, 860 A.2d 871, 878 (2004). We will only consider dismissal to be proper "if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." *Sprenger v. PSC,* 400 Md. 1, 21, 926 A.2d 238, 250 (2007) (quotations omitted). "When reviewing the grant of a motion to dismiss, an appellate court is concerned with determining whether the trial court was legally correct." *Id.*

Central to the Circuit Court's dismissal of this case was our decision in *NAACP v. Golding,* 342 Md. 663, 679 A.2d 554. In *Golding,* we considered the relationship between the courts and a voluntary membership organization, the National Asso-

---

**10.** Before this Court, Appellees have filed a Motion to Dismiss as to certain trustees ("Indicated Trustees") who are no longer serving as trustees. Appellees contend that, as to the Indicated Trustees, this case is moot. In addition, Appellees argue that this case was brought improperly as a direct, rather than a derivative, action. We need not reach either of these issues, as the Board did not act arbitrarily.

ciation for the Advancement of Colored People ("NAACP"). A dispute arose as to whether the national office of the NAACP and the Baltimore branch could prohibit youth members from voting in an election for new officers of the Baltimore Branch. Specifically, the NAACP interpreted its rules to prohibit youth members from voting unless they paid the $10 adult membership rate, rather than the $3 youth membership rate.

Upon our review in *Golding*, we reversed the judgment of a Circuit Court that had impermissibly intervened in the internal affairs of the NAACP. In so doing, we turned to the principle of non-intervention, recognizing that

> *as a general rule, courts will not interfere in the internal affairs of a voluntary membership organization.* Although similar principles have been applied to both incorporated and unincorporated associations, the rationale for non-intervention differs depending on whether the organization is a Maryland corporation, a foreign corporation, or an unincorporated entity.

If the voluntary membership organization is incorporated in Maryland, the business judgment rule applies to decisions regarding the corporation's management. The business judgment rule insulates business decisions from judicial review absent a showing that the officers acted fraudulently or in bad faith. The rationale for the business judgment rule is that:

> although directors of a corporation have a fiduciary relationship to the shareholders, they are not expected to be incapable of error. All that is required is that persons in such positions act reasonably and in good faith in carrying out their duties.... Courts will not second-guess the actions of directors unless it appears that they are the result of fraud, dishonesty or incompetence.

With regard to foreign corporations, Maryland courts have traditionally declined to interfere in management disputes under the "internal affairs doctrine." As described by

the Supreme Court in *Edgar v. MITE Corp.*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982):

> the internal affairs doctrine is a conflict of law principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs— matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.

> \* \* \* \* \* \*

> Courts have similarly assumed a limited role in resolving the internal disputes of unincorporated associations....

> \* \* \* \* \* \*

In determining whether courts should intervene in the disputes of voluntary membership organizations, Maryland has traditionally applied a narrow rule. As we stated in *Donnelly*[11]:

> The proposition that the member is not precluded from suing at law, after he has exhausted his remedies within the order, unless the contract specifically provides that the decisions of the tribunals of the order shall be final, is supported by the decisions of some States ... But the Maryland rule is otherwise. That rule ... is that when the tribunals of the order have power to decide a disputed question, their jurisdiction is exclusive, whether there is a bylaw stating such decision to be final, or not, and that the Courts cannot be invoked to review their decisions of questions coming properly before them, except in cases of fraud.

In this context, we have interpreted "fraud" to include "action unsupported by facts or otherwise arbitrary."

Our rule limiting courts' intervention in the internal disputes of unincorporated organizations absent fraud is in essence analogous to the business judgment rule applicable

---

**11.** *See Donnelly v. Supreme Council,* 106 Md. 425, 430, 67 A. 276, 278 (1907).

to incorporated organizations. As in the case of corporations, decisions of the unincorporated organization are insulated from judicial review absent fraud, irregularity, or arbitrary action. This approach is also similar to the scope of review for arbitration decisions under Maryland common law. . . .

While we ordinarily refrain from reviewing decisions of unincorporated private associations, we note that if an organization acts inconsistently with its own rules, its action may be sufficiently arbitrary to invite judicial review. In addition, as our prior cases have illustrated, the policy of minimizing judicial involvement in private organizations does not mean that members have no guarantee of procedural fairness. We have historically taken the view that members in a private organization are entitled to at least rudimentary procedural protections, such as notice and an opportunity to be heard, before they may be expelled or deprived of other important membership rights. If the organization's adjudicatory procedure does not afford the member these minimal protections, or if the organization provides no avenue for internal review or appeal, then judicial intervention may be appropriate.

*Golding,* 342 Md. at 672–79, 679 A.2d at 558–62 (citations omitted) (emphasis added).

As to the national office of the NAACP, a non-profit, voluntary membership corporation incorporated in New York, we applied the "internal affairs doctrine," thereby refusing to interfere with any internal management decisions. We opined, however, that "even under Maryland corporations law, applying the business judgment rule, we would not interfere with the organization's decision because the NAACP did not engage in any fraud, arbitrariness, or bad faith." *Golding,* 342 Md. at 681, 679 A.2d at 563. Integral to this conclusion, we noted, was the fact that the youth members' dispute concerned an ambiguous provision of the NAACP's constitution:

The disputed language in Article 5, § 12 is ambiguous because although it permits youth members to vote in

Branch elections, it does not specify the required member-
ship fee. To resolve this ambiguity, the NAACP consulted
legal counsel, and adopted an interpretation that was consis-
tent with past practice. The NAACP Constitution confers
broad authority on the Board to create and interpret the
organization's rules and to regulate membership. The or-
ganization's interpretation was not arbitrary, and therefore
is entitled to deference.

*Id.* (footnote omitted). We then applied similar reasoning
with respect to the Baltimore branch:

[W]e conclude that applying principles of corporation law,
such as the business judgment rule, to the Baltimore
Branch does not support judicial review of the Branch's
actions.... [T]he Branch merely adhered to the interpreta-
tion of Article V, § 12 promulgated by the national NAACP.
Thus, there is no basis for judicial review.... Furthermore,
as we stated in *Anacosta Tribe v. Murbach,*[12] "It would
very much impair the usefulness of such institutions, if they
are to be harassed by petty suits of this kind." [W]e believe
the very importance and effectiveness of the NAACP merit
significant judicial deference to its internal management.
Moreover, the NAACP's internal procedures for challenging
elections provided members sufficient procedural protec-
tions to ensure fairness in the Branch election.

*Golding,* 342 Md. at 682, 679 A.2d at 563 (citation and footnote
omitted).

■ Turning to the instant case, we are mindful that the
Association is a non-profit, voluntary membership organization
incorporated under the laws of Maryland. Accordingly, pur-
suant to *Golding,* we shall apply the business judgment rule
and intervene in the dispute at hand only if the Board's
actions were fraudulent or arbitrary. We do not consider
actions pursued in good faith, in purported compliance with
the Association's Bylaws, to be fraudulent or arbitrary. *See
Golding,* 342 Md. at 681, 679 A.2d at 563.

---

12. *See Anacosta Tribe v. Murbach,* 13 Md. 91, 94–95 (1859).

■■■■ Appellees maintain, generally, that the Board's actions, in this case, were not arbitrary because the provisions of the Bylaws affecting the tenures of trustees are ambiguous. A corporation's bylaws are construed under the principles governing contract interpretation. *Floyd v. Mayor & City Council of Baltimore,* 179 Md.App. 394, 436, 946 A.2d 15, 48 (2008), *aff'd,* 407 Md. 461, 966 A.2d 900 (2009); *Chisholm v. Hyattstown Volunteer Fire Dept.,* 115 Md.App. 58, 71, 691 A.2d 776, 782 (1997); *American Fed'n of Teachers v. Lubman,* 50 Md.App. 13, 19, 435 A.2d 801, 804 (1981); JAMES J. HANKS, JR., MARYLAND CORPORATION LAW, § 3.13 (2008 Supp.); *see also Gentile v. SinglePoint Fin., Inc.,* 788 A.2d 111, 113 (Del.2001) ("It is a fundamental principle that the rules used to interpret statutes, contracts, and other written instruments are applicable when construing corporate charters and bylaws."). An ambiguity does not arise merely because two parties disagree as to the meaning of a bylaw. *See Pacific Indem. v. Interstate Fire & Cas.,* 302 Md. 383, 389, 488 A.2d 486, 489 (1985). Rather, bylaw language is ambiguous if, in the mind of a reasonably prudent layperson, it is susceptible to more than one meaning. *Id.* Furthermore, we have held that language "of doubtful meaning" is ambiguous. *Cochran v. Norkunas,* 398 Md. 1, 17, 919 A.2d 700, 710 (2007).

In pertinent part, § 4.9 of the Bylaws provides that trustees shall serve terms of three (3) years, and may serve up to two (2) consecutive terms. Pursuant to § 4.7, "[t]he immediate predecessor of the Chair serves as a trustee, and assumes that office automatically upon completion of his or her elected term as Chair." Under these provisions, Appellants contend that a trustee cannot serve for more than six consecutive years. Appellants also assert that the Chair may only hold his or her position for three years, with his or her second consecutive three-year term limited to holding the position of Immediate Predecessor of the Chair.

Although Appellants' interpretation of the tenure provisions is plausible, it does not preclude the existence of other reasonable interpretations. A reasonable layperson could conclude, as to the interplay between § § 4.7 and 4.9, that a trustee may

serve for six years and that he or she would have a choice between serving: (1) two elected terms as Chair; or (2) a single elected term as Chair followed by a single term as Immediate Predecessor of the Chair. In addition, a reasonable layperson could conclude that a trustee could serve two terms as Chair and then serve as Immediate Predecessor of the Chair pursuant to § 4.7, notwithstanding the two-term limitation of § 4.9. These conclusions are plausible because a layperson could reasonably believe that an issue as important as a prohibition against a person running for a second elected term as Chair would be expressly stated in the Bylaws. There is, however, no such express limitation. Moreover, a reasonable layperson could believe that the six-year limitation applies to elected terms and that subsequent service as Immediate Predecessor is exempt from that provision.

Furthermore, we have said that "[i]f there is doubt as to the correct interpretation of a contract, the practical construction which the parties may give to their agreement is persuasive evidence of their intention." *Hughes v. Thurman,* 213 Md. 169, 177, 131 A.2d 479, 483 (1957). The construction placed upon the ambiguous language before any controversy has arisen holds significant importance. *Eisenberg v. Air Conditioning, Inc.,* 225 Md. 324, 334, 170 A.2d 743, 747 (1961). Here, over the past decade, the Board had three opportunities, at least, to consider whether a trustee may run for a second term as Chair or serve as Immediate Predecessor of the Chair following two terms as Chair. First, in 2000, the Board approved the eligibility of Smith to run for a second term, and he assumed that position upon election by the Association members. Second, upon the election of Trost as Chair in 2003, the Board seated Smith as Immediate Predecessor of the Chair, notwithstanding the fact that Smith had previously served two consecutive terms as Chair. Third, in January of 2006, when the Board approved the nomination of Trost to run for a second term as Chair, Smith continued a second term as Immediate Predecessor of the Chair. Thus, prior to the instant challenge, and over one year before litigation ensued, the Board had repeatedly determined that the Bylaws enabled

an Immediate Predecessor of the Chair to serve irrespective of the general term limitation in § 4.9.

Because the Association's Bylaws are ambiguous as to the interplay between § § 4.7 and 4.9, we cannot say that the Board acted in a manner sufficiently arbitrary to invoke intervention by a Maryland court. Similar to the NAACP in *Golding,* the Board was faced with members arguing that the Board's interpretation of the Bylaws was improper. Also similar to the NAACP, the Board sought legal counsel and adopted an interpretation of the Bylaws that was consistent with practice over the previous decade. Because the Board took the same steps as did the NAACP in interpreting its governing documents, the Board also acted in good faith and with due diligence. Thus, the Board's actions are entitled to the deference afforded by the principle of non-intervention.

Notwithstanding our conclusion that the principle of non-intervention precludes judicial review in this case, Appellants contend that *Golding* does not apply unless the organization at issue employs an extensive internal review process. We consider this contention to be unavailing, noting that in *Golding* we determined that the existence of an internal review mechanism was only an alternative basis for barring judicial intervention. We stated:

> The organization's interpretation was not arbitrary, and therefore is entitled to deference. . . .

> \* \* \* \* \* \*

> Finally, even if we considered this dispute appropriate for judicial review, we would decline to intervene in this case because the Appellees failed to exhaust their internal remedies.

*Golding,* 342 Md. at 681–83, 679 A.2d at 563.

Still, Appellants contend that *Golding* "does not apply to protect Board decisions that interfere with shareholder/members' franchise rights." (Appellant's Br. 20). In support of this proposition, Appellants rely principally on Delaware law. *See, e.g., Blasius Indus., Inc. v. Atlas Corp.,* 564 A.2d 651 (Del.Ch.1988); *Aprahamian v. HBO & Co.,* 531 A.2d 1204

(Del.Ch.1987). In *Blasius*, for example, the Delaware Court of Chancery opined as follows:

"The corporate election process, if it is to have any validity, must be conducted with scrupulous fairness and without any advantage being conferred or denied to any candidate or slate of candidates. In the interests of corporate democracy, those in charge of the election machinery of a corporation must be held to the highest standards of providing for and conducting corporate elections. The business judgment rule therefore does not confer any presumption of propriety on the acts of directors in postponing the annual meeting. Quite to the contrary. When the election machinery appears, at least facially, to have been manipulated those in charge of the election have the burden of persuasion to justify their actions."

564 A.2d at 661 (quoting *Aprahamian*, 531 A.2d at 1206–07).

The problem with Appellants' contention that *Golding* does not apply to voting rights cases is that it ignores the obvious fact that *Golding* was itself a voting rights case. *See also Sadler v. Dimensions*, 378 Md. 509, 526, 836 A.2d 655, 665 (2003) (recognizing that *Golding* "appl[ied] the [business judgment] rule to prevent judicial review of internal voting rules of a voluntary membership organization"). Although we considered Delaware law to be persuasive on an issue of Maryland corporations law in a recent case, we determined that, in the context of that case, there was no clear body of applicable Maryland case law. *See Kramer v. Liberty Property Trust*, 408 Md. 1, 968 A.2d 120 (2009). Moreover, in contrast to *Blasius*, 564 A.2d at 656, Appellants in this case were not denied the opportunity to vote for their preferred candidate; in fact, Draude received 41 % of the votes in the 2006 election.

■ Lastly, we are not persuaded that other actions taken by the Board with regard to the 2006 election were sufficiently arbitrary to warrant judicial intervention. We have held that corporate officers and directors are not liable for errors of honest and reasoned judgment; nor are they responsible to

stockholders for acts ratified by stockholders or acts that stockholders, despite notice thereof, failed to protest promptly. *Coffman v. Maryland Pub. Co.*, 167 Md. 275, 289, 173 A. 248, 254 (1934). Thus, corporate procedures do not have to be procedurally perfect to pass muster with courts, so long as they were pursued in good faith. *Id.; see also, e.g., Sadler*, 378 Md. at 526–27, 836 A.2d at 665 (collecting cases); *Golding*, 342 Md. at 673, 679 A.2d at 559 ("The business judgment rule insulates business decisions from judicial review absent a showing that the officers acted fraudulently or in bad faith."); *Parish v. Maryland & Virginia Milk Producers Ass'n*, 261 Md. 618, 681, 277 A.2d 19, 48 (1971) ("The conduct of the corporation's affairs are placed in the hands of the board of directors and if the majority of the board properly exercises its business judgment, the directors are not ordinarily liable." (quotations omitted)), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971); *Mountain Manor Realty, Inc. v. Buccheri*, 55 Md.App. 185, 193, 461 A.2d 45, 50 (1983) (noting that with the resignations of two corporate directors, the sole remaining director became the "majority" of remaining directors and had authority under statute and the bylaws to fill two vacancies, notwithstanding that under the statute defining a quorum there was the lack of a quorum).

Here, for instance, Appellants maintain that the Board violated § 6.2 of the Bylaws because the First Nominating Committee was chaired by a non-trustee. Appellants, however, ignore the fact that the Bylaws expressly permit a non-trustee to serve as chair of a nominating committee if a designating resolution so provides. Such a designating resolution was, in fact, accomplished when the Board voted to approve the committee's chairman.

Also, Appellants contend that the Board contravened § 6.3 of the Bylaws because the Second Nominating Committee was not established by June of the year preceding the election. We cannot say that this violation constituted arbitrary action necessitating judicial intervention in light of Trost's disbanding of the First Nominating Committee for

engaging in inappropriate conversations. Likewise, we cannot conclude that Trost's disestablishment of the First Nominating Committee was arbitrary. Although § 6.5 provides that a nominating committee "shall serve at the pleasure of the Board," the Bylaws are silent as to whether the Chair may or may not disestablish such a committee.

Appellants' contention that the Board acted arbitrarily when it allowed Smith, who had a conflict of interest, to Chair the Second Nominating Committee is also unavailing. Maryland corporations law permits directors to participate in transactions in which they may have conflicting interests provided that such conflicts are known to other board members and the transaction is ultimately approved by a majority of disinterested directors. *See* Md.Code (1975, 2007 Repl. Vol.), § 2–419 of the Corporations and Associations Article. Moreover, there is a strong presumption that disinterested Board members act in good faith. *See id.* § 2–405.1 (codifying the standard of care required of directors of a corporation). Thus, while "we accept all well-pled facts in the complaint, and reasonable inferences drawn from them," *Converge,* 383 Md. at 475, 860 A.2d at 878, we determine that Appellants' allegations do not support a charge of bad faith in this case. Although, we agree with the Circuit Court that the facts alleged by Appellants "may portray a [B]oard which may have become more a private club than a dynamic representation of its members," the actions of the Board with regard to the 2006 election do not amount to fraud or arbitrariness susceptible to intervention by a Maryland court.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED, WITH COSTS.**